# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1386

_____

United States of America,       *
                                *

           Appellee,       *

                                *    Appeal From the United States
      v.                    *    District Court for the
                                *    District of Minnesota.

Walter George Awada,      *

                                *

          Appellant.      *

_____

Submitted: September 15, 2005
Filed: October 10, 2005

_____

Before RILEY, HEANEY, and COLLOTON, Circuit Judges.

_____

HEANEY, Circuit Judge.

Following a jury trial, Walter George Awada was convicted of one count of conspiracy to launder money and five substantive counts of money laundering. He received a three-year probationary sentence. He appeals his convictions, arguing that the district court[1] erred in failing to grant his motion for judgment of acquittal. We affirm.

_____

[1]The Honorable James M. Rosenbaum, Chief Judge, United States District Court for the District of Minnesota.

# BACKGROUND

Awada was indicted following an investigation into a large-scale gambling ring operated by Douglas Sabby. Sabby was a bookmaker, taking bets on various sporting events. From 1987 until 2002, Sabby had virtually no lawful employment. Concerned that the assets of his illicit activity would come to the attention of the federal government, Sabby took pains to veil his gambling operation. For instance, Sabby's cellular telephone was not registered in his name, and he would pay and collect from his bettors through intermediaries.

Sabby testified that, because most illegal gamblers do not want to leave a paper trail, they would generally pay him in cash. However, one bettor–John Boss – found himself several hundred thousand dollars in debt to Sabby, and tired of the scrutiny associated with making large-sum withdrawals from his own financial accounts to pay Sabby in cash. Sabby accommodated Boss, his best client, by letting Boss write several checks from his account, made out to "cash." Boss gave Sabby a number of $5,000 checks made out in this fashion at the same time. Sabby did not have a bank account of his own, as he sought to hide the assets of his enterprise, so he sought a way to convert these checks to currency.

Sabby was a patron of Awada's bar and restaurant. Awada was one of Sabby's bettors, and thus knew he was a bookmaker. Sabby brought several of the $5,000 checks from John Boss to Awada's bar, seeking to have Awada cash them. The checks were not endorsed by Sabby, and no marking on the checks connected Sabby to them. Awada had never met John Boss, the person from whose account the checks were drawn. Although Awada would regularly cash checks for his customers, it was extremely rare for Awada to cash even one check for such a large amount. Nonetheless, Awada cashed Boss's checks as requested by Sabby, commingling them with his legitimate business proceeds when he later deposited them into his business account.

On February 3, 2003, Awada was interviewed by state and federal authorities regarding his association with Sabby. Awada stated that he remembered cashing eight to twelve $5,000 checks for Sabby. Awada told the agents that he knew Sabby was a bookmaker, and that he believed the checks were payments from one of Sabby's bettors.

Awada was subsequently indicted for conspiracy to conduct an illegal gambling business,[2] conspiracy to launder money,[3] and twelve substantive counts of money laundering.[4] At the close of the government's evidence, the district court granted Awada's motion for a judgment of acquittal as to the charge of conspiring to conduct an illegal gambling business. Because this left only the money laundering charges for jury consideration, the district court provided the jury with a redacted indictment, which contained only those counts, and instructed the jury accordingly. The jury returned a mixed verdict, acquitting Awada of eight substantive counts of money laundering, but convicting him of conspiracy to launder money, as well as four substantive counts. Awada was sentenced to a three-year term of probation, which included a sixty-day period of home confinement. This appeal followed.

## ANALYSIS

Awada argues that his money laundering convictions must be reversed because the government did not allege in the indictment nor prove to the jury any underlying unlawful activity distinct from the allegations of money laundering. He contends that the only underlying unlawful activity the government alleged was the act of cashing

---

[2] 18 U.S.C. § 1955.

[3] 18 U.S.C. § 1956(h).

[4] 18 U.S.C. § 1956(a)(1)(B)(i).

Boss's checks for Sabby, which cannot be both the underlying unlawful activity and the laundering.

To sustain a money laundering conviction, the government must prove that the defendant conducted a financial transaction designed to conceal the proceeds of a "specified unlawful activity." 18 U.S.C. § 1956; United States v. Pizano, 421 F.3d 707, 725 (8th Cir. 2005). That underlying activity must be separate from the actual laundering; cases where "the allegations of money laundering are based on the *same transaction* charged in the predicate act thereby rais[e] double jeopardy concerns." United States v. Ross, 210 F.3d 916, 920 (8th Cir. 2000); see also United States v. Seward, 272 F.3d 831, 836 (7th Cir. 2001) ("The transaction or transactions that created the criminally-derived proceeds must be distinct from the money-laundering transaction, because the money laundering statutes criminalize 'transaction[s] in proceeds, not the transaction[s] that create[ ] the proceeds." (alteration in original) (quoting United States v. Mankarious, 151 F.3d 694, 705 (7th Cir. 1998))); United States v. Butler, 211 F.3d 826, 830 (4th Cir. 2000) ("Put plainly, the laundering of funds cannot occur in the same transaction through which those funds first become tainted by crime."). For this reason, allegations of money laundering that are inseparable from the underlying crime, such as certain financial fraud transactions, have not withstood scrutiny. See, e.g., United States v. Christo, 129 F.3d 578 (11th Cir. 1997) (reversing money laundering convictions that were based on the same transmission of funds as the underlying crimes of bank fraud).

After reviewing the indictment and record evidence, we are convinced that Awada was properly charged and convicted. The indictment specifies the unlawful activity from which the criminal proceeds derived was "an illegal gambling business." (Superceding Indictment at Counts 2-14; Redacted Indictment at Counts 1-13.) Conducting an illegal gambling business is a felony under federal law, 18 U.S.C. § 1955, and thus is a predicate offense sufficient to support the "specified unlawful activity" element of the crime of money laundering, 18 U.S.C. 1956(c)(1); United

-4-

States v. Sutera, 933 F.2d 641, 643-44 (8th Cir. 1991). We are not persuaded by Awada's contention that his money laundering crime "merged" with the allegations of conspiring to conduct an illegal gambling business. Although certain acts, specifically, the check cashing, were alleged in the charge of conspiring to conduct an illegal gambling business as well as in the money laundering charges, this does not change our result. The money laundering allegations concerned *proceeds* of the illegal gambling business; they did not comprise the illegal gambling business.

Further, the record contains more than sufficient evidence that an illegal gambling business did, in fact, exist. Sabby and many of his accomplices testified that Sabby conducted a large-scale, long-running, bookmaking operation. The operation violated Minnesota law. See Minn. Stat. § 609.76, subd. 2 (classifying sports bookmaking as a felony offense); Minn. Stat. § 609.75, subd. 7 (defining sports bookmaking). It involved at least five people, and received revenues in excess of $2,000. This meets the statutory criteria of an illegal gambling business. See 18 U.S.C. § 1955(b)(1) (defining an illegal gambling business as a gambling enterprise which violates state law, involves five or more persons, and remains in continuous operation for thirty or more days or has gross revenues of $2,000 or more on any single day).

Awada obtusely argues that the illegal gambling operation could not serve as the specified unlawful activity because he was acquitted of involvement in the gambling ring. This argument misses the mark. Money laundering is a financial transaction crime involving the proceeds of some other crime; there is absolutely no requirement that a money laundering defendant also be involved in the underlying crime. United States v. Whatley, 133 F.3d 601, 605-06 (8th Cir. 1998); see also United States v. Cherry, 330 F.3d 658, 667 (4th Cir. 2003) ("It is clear that a defendant may be convicted of money laundering even if she is not a party to, much less convicted of, the specified unlawful activity."); accord United States v. Magluta, 418 F.3d 1166, 1174 (11th Cir. 2005). That Awada was not a conspirator in Sabby's

gambling ring does not exempt him from liability for laundering the proceeds of that illegal activity.

Awada further asserts that the evidence at trial was insufficient as to the scienter element of the crime. We disagree. The government was required to prove that Awada performed financial transactions (the check cashing) knowing that the transactions were designed "to conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of the specified unlawful activity." 18 U.S.C. § 1956(a)(1)(B)(i). Although Awada never directly admitted such knowledge and Sabby testified that he never made his concealment plan explicit, reasonable jurors could infer Awada was aware of what he was doing. Awada knew Sabby was a bookmaker, since Awada himself placed bets with Sabby. Awada cashed a number of $5,000 checks for Sabby, all of which were from an unknown third party, made out to "cash," and not endorsed by Sabby. Even Awada himself admitted during his interview with state and federal agents that he suspected the checks came from one of Sabby's losing customers. Accordingly, we find that a jury could reasonably conclude that Awada knew he was laundering the funds of Sabby's gambling enterprise, and that the transactions were undertaken with the intent to conceal the nature of that enterprise.

## CONCLUSION

Finding Awada's arguments in support of acquittal unconvincing, we affirm the district court.

_____