# IN THE SUPREME COURT OF IOWA

No. 146 / 04-0404

Filed May 26, 2006

**STATE OF IOWA**,

Appellee,

vs.

**ROOSEVELT (NMN) MATLOCK**,

Appellant.

_____

On review from the Iowa Court of Appeals.


Appeal from the Iowa District Court for Black Hawk County, Jon C. Fister, Judge.


Defendant appeals from conviction for willful injury and going armed with intent. The court of appeals affirmed his convictions, but ordered resentencing. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**


Linda Del Gallo, State Appellate Defender, and Shellie L. Knipfer, Assistant State Appellate Defender, for appellant.


Thomas J. Miller, Attorney General, Linda J. Hines, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Kim Griffith, Assistant County Attorney, for appellee.

**CARTER, Justice.**

Defendant, Roosevelt Matlock, appeals from his convictions for willful injury in violation of Iowa Code section 708.4(1) (2003) and going armed with intent in violation of Iowa Code section 708.8. Both convictions involved being a habitual offender pursuant to Iowa Code section 902.8. The court of appeals affirmed defendant's convictions, but ordered resentencing because, in its view, the sentencing judge had improperly considered an appellate reversal of defendant's civil commitment. After reviewing the record and considering the arguments presented, we disagree with the reasoning of the court of appeals and the district court with respect to an evidentiary issue that has been presented. We vacate the decision of the court of appeals and reverse the judgment of the district court with respect to both convictions. The case is remanded to that court for further proceedings consistent with this opinion.

The offenses with which defendant was charged grew out of a confrontation between him and Joel Riley that began inside the Uptown Lounge, located in Waterloo, and continued outside that establishment. The State's version of the events, as testified to by Riley and his friends, was as follows. Defendant had repeatedly made incoherent remarks to Riley inside the bar and bumped into him with his body. When defendant, who was wearing a purple-violet suit, walked outside the lounge, Riley followed him and accused defendant of stalking him. He specifically inquired of defendant, "Why [are] you [stalking] me with that purple ass suit on?" In addition, Riley referred to defendant as "Barney," a purple dinosaur in a children's television program.

A friend of Riley named Jay Jordan appeared on the scene and attempted to tug Riley away from defendant. Jordan testified that he had successfully moved Riley away from defendant when the latter suddenly

moved close to them and raised and lowered his arm so as to inflict cuts on Riley's head and body. Neither Riley nor Jordan was able to see the weapon that was used to inflict those injuries. Riley experienced a very substantial quantity of blood spilling from his cheek as well as from cuts on his forehead, right forearm, and left wrist. Examination revealed that his cheek had been sliced from his ear to his mouth, and the cut went all the way through, revealing his teeth through the resulting opening.

Defendant's version of the events differed from the State's version. Defendant testified that he had to separate a friend from a confrontation with Riley inside the bar. Following this the friend went to the other side of the bar, and Riley kept making threats toward that person and toward defendant. Defendant testified that he told Riley that his ranting was annoying persons in the bar and that he should continue his discussion outside. Defendant left the bar and was followed by Riley. Once outside the bar, defendant claims to have backed up against the wall and listened to more of Riley's threats against him and his friend. According to defendant, Riley reached in his pocket and lunged at him, causing him to fear for his safety. He claims he defended himself by striking out at Riley with a beer glass, which broke on contact with Riley's face. He continued to strike Riley with the broken glass.

When defendant was later apprehended by police, no weapon was located. At his trial, defendant testified that he had inflicted the injuries on Riley with a broken beer glass. A physician who performed surgery on Riley's face testified that he believed Riley's wounds were made with a knife or a box cutter. In his opinion, the clean edges of the cuts negated the likelihood that they were inflicted by broken glass. Defendant claimed justification, testifying at trial that Riley had told him inside the Uptown Lounge that he was a Vice Lord and that he intended to cause harm to

defendant and a friend of defendant who was also in the bar. He stated that Riley was backed up by two or three friends. The jury convicted defendant on both counts. Additional facts will be discussed in our consideration of the legal issues presented.

## I. *Issues on Appeal.*

The issues raised by defendant on appeal are whether (1) the district court erred in admitting evidence of other criminal acts by defendant, (2) defendant's trial counsel was ineffective for failure to object to the prosecutor's closing argument, and (3) the district court improperly considered the appellate reversal of defendant's civil commitment in the process of sentencing him. The court of appeals affirmed the district court's action with respect to the first two issues, but agreed with defendant's contention on the third issue and ordered resentencing. We granted further review. We need only consider the first issue.

## II. *Evidence of Other Crimes.*

A. *Scope of review.* We review district court rulings admitting evidence of other bad acts for an abuse of discretion and will reverse only when the rulings are untenable under the substantive limitations of the rules to be applied. *State v. Bayles*, 551 N.W.2d 600, 604 (Iowa 1996); *State v. Knox*, 536 N.W.2d 735, 738 (Iowa 1995).

B. *Preservation of error.* Prior to trial, the State moved to introduce evidence of other bad acts by defendant notwithstanding the limitations contained in Iowa Rule of Evidence 5.404(*b*). The defendant objected to the use of this evidence, arguing that it was an attempt to convict defendant based upon his propensity to commit bad acts and was not independently relevant to resolve some legitimate issue in the case. To the extent that the State urged the evidence was relevant to show the required specific intent for the crimes alleged, defendant asserted that the evidence could only show

that intent by improper resort to defendant's propensity to act in a particular manner. The district court ruled that the prior bad-acts evidence was admissible. The State concedes that error has been preserved on defendant's challenge to that ruling.

C. *The bad-acts evidence sought to be excluded.* The evidence sought to be excluded by defendant involved two incidents. The first occurred twelve days prior to the offenses that led to the present appeal. Defendant's niece and one Moses Childs had been involved in an argument over a parking place. Defendant advised Childs that he did not approve of the way that Childs had spoken to his niece. The defendant and Childs argued, and defendant struck Childs in the side with a sharp object, cutting him. The wound was approximately one-inch deep and seven inches in length. A medical expert determined that it was caused by a sharp instrument such as a knife or box cutter. In addition to allowing this evidence, the district court permitted Childs' sister to testify that she heard defendant state two hours after the stabbing incident that he meant to kill Childs.

The second incident occurred later on the same day as the offenses at issue in the present appeal. The offenses on which defendant's present convictions were based allegedly occurred at approximately 1 a.m. At 1 p.m. on that date defendant was in a bar with Wayne Winters. Winters challenged defendant over comments he had made concerning Winters' wife. Defendant removed a box cutter from his pocket. A bystander named Frederick Burnside intervened and wrestled defendant to the floor. In the ensuing scuffle, defendant cut Burnside in the back, chased him from the bar, and stated that he was going to kill him. In allowing evidence of these two incidents, the district court ruled that the bad acts were relevant to the issues of motive, intent, opportunity, and knowledge, and the jury was

instructed that they could consider the evidence as it pertained to those matters.

In *State v. Sullivan*, 679 N.W.2d 19 (Iowa 2004), we considered the use of bad-acts evidence to show specific intent. We discussed and agreed with the views of two commentators who considered the use of such evidence for this purpose to be an unwarranted deviation from the evidentiary rule excluding evidence of propensity to commit bad acts. *Sullivan*, 679 N.W.2d at 26-27. The commentators whose conclusions were discussed in *Sullivan* based their conclusions on the fact that, in most instances, the only way the intent element of the crime on trial may be linked to prior unrelated bad acts is to assume the accuser's propensity to entertain the same intent in similar situations. *Id.* at 26 (quoting Edward J. Imwinkelried, *The Use of Evidence of an Accused's Uncharged Misconduct to Prove Mens Rea: The Doctrines Which Threatened to Engulf the Character Evidence Prohibition*, 51 Ohio St. L.J. 575, 583-84 (1990) [hereinafter Imwinkelried]). Similar considerations are expressed in Abraham P. Ordover, *Balancing the Presumption of Guilt and Innocence: Rules 404(b), 608(b) and 609(a)*, 38 Emory L.J. 135, 158 (1989). Both of these commentators discuss Federal Rule of Evidence 404(b), which is the equivalent of Iowa Rule of Evidence 5.404(*b*).

We concluded in *Sullivan* that the use of propensity evidence to show intent is contrary to the purposes of rule 5.404(*b*). *Id.* at 29. We held (and in so doing overruled existing precedent) that other bad acts may only be allowed as evidence of the required mens rea for the crime charged if the acts are probative of that intent in a manner other than a propensity of the accused to act in a particular manner. *Id.* at 28.

1. *The willful injury charge.* Under the district court's instructions, the elements of the willful injury charge required the State to prove that

defendant "intended to cause a serious injury to Joel Riley." We are unable to ascertain any theory under which the other bad-acts evidence allowed by the district court tended to show defendant's intent in the case on trial other than by resort to his propensity to harm others. This places the bad-acts evidence outside the boundaries of what is now allowed under *Sullivan.*

With one exception, the State has suggested no alternative to propensity as a probative theory for the admission of this evidence to show specific intent. The one theory that the State does propound is labeled as "the doctrine of objective chances." It was relied on by the court of appeals in approving the use of the bad-acts evidence in the present case. As described by the court of appeals, this doctrine provides that an accused's involvement in several similar acts that on their face appear to have been done with requisite criminal intent gives rise to an intermediate inference that it is objectively improbable his involvement in so many similar incidents was in fact innocent. The doctrine is discussed in the Imwinkelried article at 595. An examination of the doctrine as described by that commentator suggests that it is based on the improbability that *all* potentially criminal acts in a series of similar actions are innocent. Imwinkelried states the proposition as follows (as applied to three acts):

> It flies in the face of common sense to assume that on all three occasions, the accused had an innocent state of mind; a coincidence of three, inadvertent, similar acts is objectively unlikely.

*Id.* at 595-96. We are reluctant to accept this doctrine as an alternative theory for avoiding the limitations established in *Sullivan.*

As described by Imwinkelried and alluded to by the State in the present case, the doctrine of objective chances is based on the improbability that all acts in a series of acts are innocent. The doctrine does not sustain the conclusion that none of the acts in the series of acts were done without

the required criminal intent nor does it assist a trier of fact in determining in which instances that might be so or is not so. Resort to the doctrine of objective chances is particularly inappropriate with respect to the willful-injury charge in the present case where a defense of justification was presented as to one of the bad acts and not shown to have been involved in the others. This circumstance makes the case on trial sufficiently dissimilar from the others that the doctrine cannot be applied according to its own terms.

The district court also concluded that the other bad-acts evidence was relevant to show motive, opportunity, and knowledge. We disagree. All three of the stabbings in which defendant was involved grew out of verbal altercations with the victim. Each of these situations was different from the others and sheds no light on the motive in the other stabbings. Nor was the challenged evidence needed to show a particular knowledge on defendant's part because that was not a matter required to be established.

Opportunity, as viewed by the district court, had reference to defendant's access to a sharp cutting instrument. In considering the willful-injury charge, it made no difference whether defendant assaulted Riley with a box cutter or a broken beer glass. His defense in either instance depended on a claim of justification.[1] The other bad-acts evidence was not admissible for any purpose on the willful-injury charge.

2. *The going-armed-with-intent charge.* The trial of the going-armed-with-intent charge presented a factual issue concerning whether defendant

---

[1]Under the district court's instructions, the intent element involved in the jury's consideration of the justification defense required the State to prove that defendant could not have a reasonable belief that the force he used was necessary to avoid imminent danger of death or serious injury. Because this is an entirely objective standard, it did not involve proof of a specific intent on defendant's part but, rather, was dependent on the facts of the altercation as viewed by the jury. Consequently, the affirmative defense provides no issue concerning defendant's intent for which evidence of other bad acts might serve as evidence under rule 5.404(*b*).

was armed with a sharp cutting instrument. The district court instructed the jury that defendant must be shown to have armed himself with a cutting device similar to a knife, box cutter, or razor. We conclude that the evidence of the other stabbing incidents was relevant to show defendant's access to a sharp cutting instrument. In weighing the probative value of the evidence of the other bad acts against the danger of unfair prejudice, we must consider the actual need for the evidence in light of the issues and the other evidence available and weigh this against the extent to which the evidence might improperly influence the jury. *State v. White*, 668 N.W.2d 850, 855 (Iowa 2003). We are satisfied that the State's need for evidence to show defendant's possession of a sharp cutting instrument was sufficiently great that the probative value of the circumstances surrounding the other two stabbing incidents outweighs the prejudicial effect of that evidence.

Nevertheless, the district court erred in permitting the jury to consider evidence of the other bad acts for purposes of establishing the specific intent required for the crime. Under the district court's instructions, the State was required to establish that defendant armed himself with a cutting instrument with intent to use that device against another person without justification. Our cases suggest that with respect to this crime that intent must be present at the time the accused arms himself and goes forth to harm another. *State v. Ray*, 516 N.W.2d 863, 865-66 (Iowa 1994); *State v. Slayton*, 417 N.W.2d 432, 434-35 (Iowa 1987); *see also State v. Buchanan*, 207 N.W.2d 784, 786 (Iowa 1973) (decided under prior law). We are convinced that the use of the other bad-acts evidence to show that intent was a resort to defendant's propensity to commit similar acts, contrary to the limitation laid down in *Sullivan*. The district court's limiting instruction failed to restrict the jury's consideration of the bad-acts evidence

for that improper purpose.[2] This was sufficiently prejudicial to require reversal of the going-armed-with-intent conviction. On retrial, if evidence of the other stabbing incidents is allowed to show defendant's access to a sharp cutting instrument, the jury should be instructed that this evidence may be considered for that purpose only on the going-armed-with-intent charge and for no purpose on the willful-injury charge.

We have considered all issues presented and conclude that the judgments of conviction on both charges must be reversed and the case remanded for a new trial.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

---

[2]A record was made at the suppression hearing challenging the admission of this evidence to show intent. The defendant asserted that the evidence was not admissible for that purpose. The district court ruled otherwise and stated in its ruling that the evidence would be admitted for purposes of showing motive, intent, knowledge, and opportunity. The jury was so instructed. Having made his record on these points at the suppression hearing, defendant was not required to object to the court's limiting instruction. The court had already ruled on the basis for the instruction, *see James v. Burlington Northern, Inc.*, 587 N.W.2d 462, 464 (Iowa 1998) (failure to object to instructions is not an abandonment of position taken on pretrial rulings that form the basis for instructions); *Florke v. Peterson*, 245 Iowa 1031, 1036, 65 N.W.2d 372, 375 (1954) (same), and under the circumstances, defendant could well have viewed some limiting instruction as more favorable than no limiting instruction.