**IN THE COURT OF APPEALS OF IOWA**

No. 13-0576
Filed November 13, 2014

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**ANTHONY LAVEAL MOODY,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Lee (South) County, Mary Ann Brown (trial), William L. Dowell (motion in limine), and Michael J. Schilling (motion to suppress), Judges.

Defendant appeals his convictions and sentence for delivery of cocaine, money laundering, and possession of marijuana. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**

Mark C. Smith, State Appellate Defender, Patricia Ann Reynolds, Assistant Appellate Defender, and Angela J. O'Kane, Student Legal Intern, for appellant.

Thomas J. Miller, Attorney General, Aaron Rogers and Jean Pettinger, Assistant Attorneys General, Michael P. Short, County Attorney, and Stephanie Koltookian, Student Legal Intern, for appellee.

Heard by Danilson, C.J., and Doyle and Tabor, JJ.

**DANILSON, C.J.**

Anthony Moody appeals his convictions and sentence for three counts of delivery of cocaine, as a second or subsequent offender, in violation of Iowa Code sections 124.401(1)(c)(2) and 124.411 (2013); one count of money laundering, in violation of section 706B.2; and one count of possession of marijuana, in violation of section 124.401(5). Moody contends the district court should have granted his motion to suppress evidence obtained during the execution of search warrants that were not properly supported by probable cause. He also contends the district court abused its discretion by admitting into evidence text messages that contained inadmissible hearsay and evidence of other bad acts. Additionally, Moody contends he received ineffective assistance from trial counsel. Specifically, he contends counsel was ineffective for failing to challenge the State's use of a peremptory strike on a minority juror and for failing to properly challenge the State's interpretation of the money laundering statute.

Because we find the evidence in the application for the search warrant was not stale and the warrants were supported by probable cause, we affirm the district court's ruling on the motion to suppress. We find the challenged evidence was, in part, admissible as admissions by a party-opponent, as it relates to the money laundering charge. The text message evidence was also admissible to prove a disputed factual issue concerning the money laundering charge. We find trial counsel was not ineffective for the alleged failure to establish a prima facie case of purposeful discrimination after the State's peremptory strike of a minor juror. However, we find Moody's trial counsel was ineffective in failing to raise in the motion for acquittal the proper interpretation of section 706B.2(1)(a). If this

issue had been properly raised, the money laundering charge would have been dismissed. Accordingly, we reverse Moody's conviction for money laundering and remand the case for dismissal of that charge. We affirm all other convictions.

## I. Background Facts and Proceedings.

On June 5, 2011, Moody was charged by trial information with two counts of delivery of cocaine. The case was tried to a jury on October 18, 2011. The trial ended in a deadlocked jury, and a mistrial was declared on October 21, 2011.

Before the retrial, law enforcement continued their investigation. On January 17, 2012, an officer with the Keokuk Police Department filed an application for a search warrant to obtain Moody's phone records. In the application, the officer alleged that Angela Bollin, a personal friend of Moody's, had acted as a confidential informant participating in two controlled buys on January 10, 2011. The application stated that Bollin had used the number in question to set up the buys with Moody. The application also alleged that on January 5, 2012, an unnamed confidential information (CI) had participated in a controlled buy, purchasing 3.5 grams of cocaine from a man who matched Moody's description. The seller told the CI he could be reached at the same phone number Bollin had used, and identified himself as "Tone." The officers witnessing the controlled buy discovered "Tone" arrived in a car rented by Moody. On the rental application, Moody listed the same phone number Bollin used to set up the buys approximately one year prior. A magistrate granted the

application for the search warrant. Ultimately nine search warrants were obtained, each premised upon the initial two warrants and the property seized.

Moody was charged by a second trial information with one count each of delivery of cocaine, possession of marijuana, and money laundering on May 9, 2012.

On June 25, 2012, Moody filed a motion to suppress. He maintained the two initial applications for search warrants contained stale evidence and argued that without it the search warrants were not supported by probable cause. Moody contended the remaining warrants were invalid because the successive warrants were premised upon the initial two warrants.[1] Following an August 8, 2012 hearing on the matter, the district court denied Moody's motion.

On December 31, 2012, the district court ordered the two cases be consolidated. As a result, a consolidated trial information was filed January 2, 2013, charging Moody with three counts of delivery of cocaine, one count of money laundering, and two counts of possession of marijuana.

The matter proceeded to trial on January 7, 2013. During voir dire, the State used a peremptory strike against the only remaining African-American juror on the panel. Moody's attorney made a *Batson* challenge,[2] and the State responded. The court ruled that the State had not engaged in purposeful discrimination and overruled Moody's objection. The jury was then empaneled.

---

[1] Moody challenged each of the nine search warrants because each of the successive applications relied on the fruits obtained from the execution of the first two warrants. He challenged the information contained in the first two applications and then relied on the principle that information obtained from an unlawful search cannot be the basis for the issuance of a later search warrant. *See State v. Ahart*, 324 N.W.2d 317, 318 (Iowa 1982).

[2] *See Batson v. Kentucky*, 476 U.S. 79, 89 (1986).

At trial, Bollin testified for the State. Over the defense's objection that they were hearsay and evidence of prior bad acts, the State sought to admit evidence of text messages sent between Bollin and Moody between January 4, 2011, and March 4, 2011. The text messages purportedly contained information regarding various instances when Moody had sold drugs to Bollin. The district court allowed the text messages to be admitted into evidence. Bollin also testified about the text messages, explaining what various texts meant and what happened both before and after certain messages were sent. Moody did not object to this testimony.

Following the close of the State's case, Moody's counsel moved for a judgment of acquittal on the money laundering charge on the basis that there was not sufficient evidence to convict Moody.[3] The court denied the motion.

On January 11, 2013, the jury returned guilty verdicts for each of the five counts[4]: delivery of cocaine (count I, II, and III), money laundering (count IV), and possession of marijuana (count V).

On March 22, 2013, the district court entered judgment. Moody was sentenced to a term of incarceration not to exceed fifteen years on counts I and II. Those sentences were set to run concurrently to each other. Moody was sentenced for a term of incarceration not to exceed thirty years for count III and a term of incarceration not to exceed fifteen years for counts IV and V. The

---

[3] Moody's attorney moved for a judgment of acquittal on each of the five charges for various reasons. On appeal, the only issue involves the motion relative to the money laundering charge.

[4] At trial, the jury was instructed on one count of possession of marijuana rather than two counts.

sentences for counts III, IV, and V were set to run concurrently to each other but consecutively to the sentence to counts I and II.

Moody appeals.

## II. Standard of Review.

Because Moody challenges the validity of the search warrant on constitutional grounds, our standard of review is de novo. *See State v. Thomas*, 540 N.W.2d 658, 661 (Iowa 1995). We do not make an independent finding as to the existence of probable cause; we consider only whether the issuing magistrate had a substantial basis for the finding. *State v. Davis,* 679 N.W.2d 651, 656 (Iowa 2004).

Generally, we review the district court's evidentiary rulings for an abuse of discretion. *State v. Huston*, 825 N.W.2d 531, 536 (Iowa 2013). We review the court's hearsay rulings for corrections of errors at law. *State v. Reynolds*, 746 N.W.2d 837, 841 (Iowa 2008).

A defendant may raise an ineffective-assistance claim on direct appeal if he has reasonable grounds to believe the record is adequate for us to address the claim on direct appeal. *State v. Straw,* 709 N.W.2d 128, 133 (Iowa 2006). If we determine the record is adequate, we may decide the claim. *Id.* We review claims for ineffective assistance of counsel de novo. *Id.*

## III. Discussion.

### A. Motion to Suppress.

The police executed search warrants based on a series of nine separate applications. The first application included a scrivener's error that was corrected

in the second application—they were otherwise identical.[5] Each successive application relied on the fruits obtained from execution of the first warrant. Moody contends the first and second warrant application failed to establish probable cause, so the evidence obtained during the execution of the first two warrants must be suppressed and cannot be used in a derivative manner to obtain other evidence. Specifically, he contends the evidence recited in the first and second application was stale and neither the credibility of the informant nor the informant's information was established within the warrant application.

The Fourth Amendment requires every search warrant to be supported by probable cause.[6] U.S. Const. amend. IV. "Probable cause is established when a person of reasonable prudence would believe a crime was committed on the premises to be searched or evidence of a crime could be located there." *State v. Randle*, 555 N.W.2d 666, 669 (Iowa 1996). The warrant application must show "a nexus between the criminal activity, the things to be seized and the place to be searched." *Id.* In making the probable-cause determination, "a judge may rely on reasonable common-sense inferences from the information presented." *State v. Poulin*, 620 N.W.2d 287, 290 (Iowa 2000). Close cases are decided in favor of upholding the validity of the warrant. *Id.* In conducting our review, we are limited to "that information, reduced to writing, which was actually presented to the

---

[5] The initial application stated the officer was seeking access to Moody's phone records from June 19, 2012, to January 17, 2012. The second application corrected the dates as January 1, 2011, to January 17, 2012.

[6] Moody raises his argument under the Fourth Amendment to the U.S. Constitution and article 1, section 8 of the Iowa Constitution. Because Moody does not articulate a different standard for analysis under article 1, section 8 of the Iowa Constitution than is applied by the United States Supreme Court under the Fourth Amendment, we apply the federal standard in this case. *See State v. Kern*, 831 N.W.2d 149, 174 (Iowa 2013).

magistrate at the time application for the warrant was made." *Randle*, 555 N.W.2d at 668–69.

Moody contends the information concerning the controlled buys by Bollin approximately one year prior to the application was stale and did not establish probable cause for a warrant. "Allegations of criminal conduct may be so distant in time as to provide no probable cause for a warrant." *Id.* at 670. There is no bright line rule for when evidence of criminal activity becomes stale. *Id.* Whether information is stale depends on the circumstances of the case. *State v. Gogg*, 561 N.W.2d 360, 367 (Iowa 1997). Some of the circumstances that are relevant include:

> (1) the character of the crime (whether an isolated event or an ongoing activity), (2) the character of the criminal (nomadic or stable), (3) the nature of the thing to be seized (perishable, easily destroyed, not affixed and easily removable, or of enduring utility to the holder), and (4) the place to be searched (mere criminal forum of convenience or secure operational base).

*Id.* (internal citations omitted).

Here, the information Moody contends is stale was just one piece of the information in the warrant application. The application alleged Moody had used the phone number one year prior during the controlled buys with Bollin and also again used the same phone number for the controlled buy with the CI approximately two weeks before the warrant application was filed. There had been a significant passage of time between the controlled buys with Bollin and the applications for search warrants, but the evidence "indicates the offenses are of a continuous nature." *State v. Gillespie*, 503 N.W.2d 612, 616 (Iowa Ct. App. 1993) (where the drug sale is not recent, "it is necessary for the magistrate to

make a determination whether the evidence discloses a continuing offense that is likely to remain in operation for a period of time"). Moreover, recent information in the search warrant application that corroborates otherwise stale information may serve to "refresh" the information. *See United States v. Spikes*, 158 F.3d 913, 924 (6th Cir. 1998). Although "[i]nformation that there was property at a specific location several weeks or months in the past may not be sufficient to establish a substantial probability the property is still at the same location on the date the application for the warrant is made," in this case the officer's application was for a warrant to search records maintained by the phone company, I-Wireless, not property or an area under Moody's control. *See Gillespie*, 503 N.W.2d at 616. The nature of thing to be searched, the records, was enduring in nature and not easily destroyable by Moody. In this circumstance, the use of the information obtained over a year before the warrant application did not cause the warrant to be stale.

Moody also contends the warrant was not supported by probable cause because neither the credibility of the informant or the informant's information was established within the warrant application. Iowa Code section 808.3 requires "[t]he application or sworn testimony supplied in support of the application must establish the credibility of the informant or the credibility of the information given by the informant." A magistrate "must make specific findings that the confidential informant is credible based on one of the following grounds: (1) the informant has provided reliable information on previous occasions; or (2) the informant or information appears credible for reasons specified by the magistrate." *State v. Myers*, 570 N.W.2d 70, 73 (Iowa 1997). If the magistrate does not satisfy the

requirement, the probable cause determination must be evaluated without reference to the information obtained from the confidential informant. *Id.*

Here, the magistrate checked a box on the form indicating the informant's information was found to be credible because it "has been verified in whole or part by others." The informant completed a controlled buy with a male who matched the description of Moody and who stated he could be called "Tone." The male provided the same telephone number Moody had previously given Bollin. The officers were able to hear the discussion because the informant was wearing a wireless microphone. Officers nearby witnessed the individual who made the delivery drive up in a white 2012 Chevy Impala that was registered to Enterprise Rentals. After further investigation, the officers learned Enterprise Rentals had rented the vehicle to Moody and he had provided the same number the CI received. Additionally, the CI described text messages received from the same number regarding future cocaine sales. The officers were then able to personally view the text messages.

We find the information contained in the search warrant was not stale but rather established a continued pattern of illegal activity. Additionally, the magistrate properly made findings that the information provided by the confidential informant was credible because it was verified in whole or in part by the police officers conducting the investigation. The search warrant was supported by probable cause, and the district court properly denied Moody's motion to suppress.

**B. Admission of Evidence: Text Messages.**

Moody contends the district court abused its discretion in allowing text messages between Moody and Bollin to be admitted into evidence. Specifically, Moody contends the text messages were inadmissible hearsay and included improper evidence of other bad acts.[7]

*Hearsay.* As the State maintains, the text messages Moody sent were admissible pursuant to Iowa Rule of Evidence 5.801(d)(2)(A), which provides that a statement is not hearsay if "[t]he statement is offered against a party and is . . . the party's own statement." "[P]arty-opponent admissions are admissible whether or not the opponent testifies." *State v. Bayles*, 551 N.W.2d 600, 606 (Iowa 1996) (citing 7 James A. Adams & Kasey W. Kincaid, *Iowa Practice* § 801.9, at 401 (1988)).

The same rule does not apply to the text messages sent by Bollin. The State maintains that even if the text messages sent by Bollin are hearsay, their admission was harmless error because they were largely duplicative of Bollin's testimony at trial. Our supreme court has held that the erroneous admission of hearsay is presumed to be prejudicial unless the contrary is established affirmatively. *State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998). However, "the erroneously admitted hearsay will not be considered prejudicial if substantially the same evidence is properly in the record." *State v. Newell*, 710 N.W.2d 6, 19

---

[7] Moody also mentions in one sentence that the text messages were not properly authenticated. We consider this issue waived. Iowa R. App. P. 6.903(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."); *see also Soo Line R. Co. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 691 (Iowa 1994) ("[Appellant's] random mention of this issue, without elaboration or supportive authority, is insufficient to raise the issue for our consideration.").

(Iowa 2006). In this case, Moody objected to the introduction of the exhibit containing the text messages in written form into evidence. However, Moody did not object to Bollin's testimony regarding the text messages. He also did not object when Bollin read several of the text messages verbatim into the record. Although the text messages sent by Bollin are not subject to a readily identifiable hearsay exception, we cannot say the admission was prejudicial because substantially the same evidence was admitted. *See* Iowa R. Evid. 5.103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. . . .").

*Inproper Evidence of Prior Crimes.* Moody contends, in the alternative, that the admitted text messages were improper other crimes evidence. Moody was charged with multiple counts of delivery of cocaine, stemming from the alleged controlled buy between himself and Bollin on January 10, 2011. He apparently concedes that the text messages between the two allegedly regarding that sale are not improper evidence of other crimes. However, he maintains that the text messages admitted from eleven other dates portrayed him as a drug dealer and were improperly admitted in violation of Iowa Rule of Evidence 5.404(b). The rule states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

"The general rule is that one crime cannot be proved by proof of another." *State v. Cott*, 283 N.W.2d 324, 326 (Iowa 1979). Our supreme court recently

summarized the analysis to undergo in determining if prior-bad-acts evidence is admissible:

> In determining whether to admit prior-bad-acts evidence, we rely on a three-step analysis. A court must first determine whether the evidence is relevant to a legitimate, disputed factual issue. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The general test of relevancy is "whether a reasonable [person] might believe the probability of the truth of the consequential fact to be different if [the person] knew of the proffered evidence." Irrelevant evidence is, of course, inadmissible evidence.
>
> There also "must be clear proof the individual against whom the evidence is offered committed the bad act or crime." In assessing whether clear proof of prior misconduct exists, the prior act need not be established beyond a reasonable doubt, and corroboration is unnecessary. "There simply needs to be sufficient proof to 'prevent the jury from engaging in speculation or drawing inferences based on mere suspicion." Testimony of credible witnesses can satisfy the clear-proof requirement.
>
> If the evidence is relevant to a legitimate and disputed factual issue, and the clear-proof requirement is satisfied, the court must determine whether the evidence's "probative value is substantially outweighed by the danger of unfair prejudice to the defendant." We consider a series of factors in weighing probative value against the danger of unfair prejudice.

*State v. Putnam*, 848 N.W.2d 1, 8–9 (Iowa 2014) (internal citations omitted).

Unfortunately, we are not aided in our analysis by a record of the district court's analysis. Although an order in limine was filed, the record made on Moody's motion in limine primarily related to whether the State could authenticate the text messages as messages actually sent by Moody. The court denied Moody's motion in limine concerning prior bad acts evidence as it related to the money laundering charge except that such evidence would not be permitted to

show that Moody acted in conformity with the prior bad acts.[8]  In regard to the text messages, the court was satisfied that the State "has properly authenticated the text messages" and stated:

> [A]ny portion of the pending motion which is sustained is done so without prejudice to the right of the party offering the evidence to offer proof during the course of the trial, outside the presence of the jury, of those matters precluded by this order, and, if it then appears in light of the record made that the evidence is relevant, material and competent and its probative value outweighs any prejudicial effect, the evidence may then be introduced subject to the opposing counsel's objections. Such is consistent with the purpose of a motion in limine to add a procedural step to the offer of evidence and such is not a final ruling on the evidence.

(citing *State v. Twyford*, 220 N.W.2d 919, 923 (Iowa 1974)).

The State maintains the evidence in question was properly admitted because it was evidence of a crime at issue in the trial—money laundering—and thus not evidence of "other bad acts."  The State also contends, in the alternative, the evidence was properly admitted because it helped prove Moody's identity as the drug dealer in the buy with the CI.[9]

---

[8] In an unusual procedural step, in its written order, the court also notes, "The parties agreed that the Court should consider the record made during this hearing as an offer of proof pursuant to Rule 5.104, Iowa R. Evid."

[9] To the extent the text messages pertained to a specific drug transaction such as where to meet, the purpose of the meeting, and what the transaction was to entail, the evidence may have been admissible pursuant to the inextricably intertwined doctrine. "The inextricably intertwined doctrine holds other crimes, wrongs, or acts evidence that is inextricably intertwined with the crime charged is not extrinsic evidence but, rather, intrinsic evidence that is inseparable from the crime charged." *State v. Nelson*, 791 N.W.2d 414, 420 (Iowa 2010).  It provides a narrow exception to Iowa Rule of Evidence 5.404(b), prohibiting the admission of evidence of other crimes, wrongs, or acts.  *Id.* at 423.  Evidence is admissible under the inextricably intertwined doctrine only "to complete the story of what happened when the other crimes, wrongs, or acts evidence is so closely related in time and place and so intimately connected to the crime charged that it forms a continuous transaction."  *Id.*  Furthermore, the evidence is admissible only "when a court cannot sever this evidence from the narrative of the charged crime without leaving the narrative unintelligible, incomprehensible, confusing, or misleading."  *Id.* Because rule 5.404(b) is not applicable, the evidence is admitted "without limitation and irrespective of its unfair prejudice or its bearing on the defendant's bad character."  *Id.* at

The money laundering charge required the State to prove Moody was engaged in a "specified unlawful activity," which he "committed for financial gain on a continuing basis." *See* Iowa Code § 706B.2(a) ("It is unlawful for a person to commit money laundering by doing any of the following: To knowingly transport, receive, or acquire property or to conduct a transaction involving property, knowing that the property involved is proceeds of some form of unlawful activity, when, in fact, the property is the proceeds of specified lawful activity."); *see also* Iowa Code § 701B.1(3). Here, the text messages were evidence that Moody was continuously engaged in dealing cocaine, a specified unlawful activity, on twelve different dates between January 4, 2011, and March 4, 2011. The text messages also indicated Moody was involved in the activity for financial gain, as he was offered and bargained for various amounts of cash, gift cards, and food stamps in exchange. Because the evidence was relevant and material to a legitimate issue in dispute, it is prima facie admissible. *State v. Sullivan*, 679 N.W.2d 19, 25 (Iowa 2004).

Although the evidence was prejudicial to Moody, we cannot say the district court abused its discretion in permitting the text messages to be admitted into evidence as it related to the money laundering charge. The information contained in the text messages related to a disputed factual issue, namely whether Moody was involved in a specified unlawful activity as defined by section 706B.1(3). It was both probative and inseparable from the money laundering charge. With the aid of Bollin's testimony, there was clear proof that Moody

420. However, the State has not argued such evidence was admissible under this doctrine.

committed the misconduct. The evidence was more probative than prejudicial as the text messages occurred between the second and third controlled buys and aided in showing the "continuous" nature of Moody's activities. This type of prejudice is neither unfair nor outweighs its probative effect. Thus, the evidence was admissible in this combined trial, and the question becomes for what purpose the evidence may be used by the jury.[10] *State v. Matlock*, 715 N.W.2d 1, 7 (Iowa 2006) (concluding the jury should be instructed upon which purpose evidence of prior bad acts may be used). The difficulty here is that Moody faced several drug delivery charges and a drug possession charge.

The State contends the evidence was also admissible to establish Moody's identity. Our supreme court has stated, "In cases in which evidence of prior bad acts is offered for the purpose of proving identity, we have imposed a more demanding test than the general relevancy test." *Putnam*, 848 N.W.2d at 12. The acts must be "strikingly similar." *Id.* But the State acknowledges that identity was only seriously at issue for one of the three charges of delivery. Counts I and II involved alleged delivery of cocaine to Bollin who had known Moody for approximately fifteen years. Count III involved a delivery of cocaine to a confidential informant who was not familiar with Moody. Identity was also not at issue concerning count V, the charge of possession of marijuana.

If the evidence was admissible to show identity on all counts, Moody's issue on appeal fails. Even if the evidence was inadmissible for only some counts, Moody has not established any error. No record was made at trial

---

[10] Moody's argument on appeal does not specifically reference the limited use of such evidence but does tangentially touch upon it, so we have chosen to address it.

seeking an admonition or limiting instruction concerning the jury's use of the text messages evidence. We note that Moody's motion in limine minimally requested that the jury be instructed that the text messages evidence could only be used in connection with the money laundering charge. Although the parties agreed the record made pertaining to the motion in limine would serve as an offer of proof, we do not believe this constitutes a sufficient method to bring the issue to the district court's attention. In regard to limiting instructions, our supreme court has stated, "The important point is that the trial court's attention be directed to the need of and the desire for a limiting instruction in such a manner and at such time that [the court] will have the opportunity to properly instruct the jury." *Vint v Ashland*, 139 N.W.2d 457, 464 (Iowa 1966). We think the same principle applies to an admonition to the jury. We also observe the trial judge did not preside over the hearing on the motion in limine. We acknowledge that our supreme court has concluded that error is preserved and failure to object to instructions is not fatal where a pretrial ruling forms the basis for instructions. *State v. Matlock*, 715 N.W.2d at 6 (concluding the defendant need not object to jury instructions where the defendant challenged the admission of evidence at a suppression hearing). Here, the court presiding over the motion in limine did not rule that the text message evidence was admissible on all counts, only that the State had properly authenticated the messages.[11] The court also did not reject or even rule upon Moody's pretrial request for a limiting instruction. Accordingly we conclude that

---

[11] We acknowledge that if a trial court conclusively rules in limine to admit evidence that the defendant need not reobject to preserve error. *State v. Derby*, 800 N.W.2d 52, 57 (Iowa 2011). But we conclude the district court did not conclusively rule in limine on the admissibility of the text messages as it simply stated that the State had properly authenticated the text messages and are admitted subject to a showing of relevancy.

even if the text message evidence was only admissible for one or two of the counts, Moody has not preserved error because he did not request an admonition of limiting instruction on the use of the evidence. Moreover, no issue has been raised on appeal claiming counsel was ineffective for failing to seek an admonition or limiting instruction on the use of the text message evidence, nor do we intimate that such an issue would have been successful. We conclude the district court did not abuse its discretion in admitting the evidence.

**C. Ineffective Assistance of Counsel.**

On appeal, Moody contends trial counsel provided ineffective assistance. Specifically, he maintains trial counsel was ineffective for failing to establish a prima facie case of purposeful discrimination after the State's peremptory strike of a minority juror. He also maintains counsel was ineffective for failing to move for a judgment of acquittal on the money laundering charge.

To prevail on a claim of ineffective assistance of counsel, Moody must prove by a preponderance of the evidence (1) the attorney failed to perform an essential duty and (2) prejudice resulted from the failure. *State v. Rodriguez*, 804 N.W.2d 844, 848 (Iowa 2011). To prove counsel failed to perform an essential duty, he must show "counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms." *See Strickland v. Washington*, 466 U.S. 668, 688 (1984). Moody must overcome a strong presumption of counsel's competence. *Id.* at 689. To establish prejudice, he must show there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Id.* at 694.  The claim fails if either element is lacking.  *See Everett v. State*, 789 N.W.2d 151, 159 (Iowa 2010).

    ***Batson Challenge.***  In *Batson v. Kentucky*, 476 U.S. 79, 89 (1986), the United States Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment prevents a prosecutor from using peremptory strikes to challenge potential jurors "solely on account of their race."  The defendant bears the burden to establish a prime facie case of purposeful discrimination in selection of the jury panel.  *Id.* at 96; *see also State v. Griffin*, 564 N.W.2d 370, 375 (Iowa 1997).  To establish the prima facie case, the defendant must show (1) he is a member of a cognizable racial group, (2) the prosecutor used peremptory challenges to remove a member of a cognizable racial group from the jury; and (3) the "facts and any other relevant circumstances raise an inference that the prosecutor used the strike to exclude" the juror on the account of the juror's race.  *Batson*, 476 U.S. at 96; *see also Powers v. Ohio*, 499 U.S. 400, 416 (1991) (holding the defendant and the prospective juror do not have to be the same race to qualify for a *Batson* challenge).  Once the prima facie case has been made, "an inference arises that the government violated the defendant's equal protection rights and the State has the burden of articulating a clear and reasonable specific race-neutral explanation for the peremptory strike." *Griffin*, 564 N.W.2d at 375 (internal quotations omitted).  The trial court must then make a determination whether purposeful discrimination occurred.  *Id.*

    We prefer to preserve ineffective assistance of counsel claims for development of the record and to allow trial counsel an opportunity to defend against the charge.  *State v. Tate*, 710 N.W.2d 237, 240 (Iowa 2006).

Notwithstanding, here we find the record is sufficient to resolve the *Batson* challenge even though voir dire was held off the record. During voir dire, a record was made outside the presence of the jury following the attorneys' examination for cause and the exercise of their strikes. The court explained what had taken place off the record and gave both attorneys the chance to correct the statements or offer any additional information. We find this record is adequate for our review. *See* Iowa Code § 814.7(3).

In summarizing the proceedings held off the record, the district court stated:

> [The juror in question] is on the jury panel and [he] is an African American and Mr. Moody's an African American and at this point in time [the juror in question] is the only African American that's still on the jury panel for the attorneys to exercise peremptory strikes about.
>
> And I'm going to make a few comments, counsel, and if I'm wrong in anything I say, please correct it; but during [the State's] examination for cause, [the State] had extensive discussions with [the juror]. [The juror] knows Mr. Moody and also apparently knows several of the people who will be witnesses in this case, and he also has long-term contact and relationship, I believe, with Ms. Bollin, one of the witnesses of the State in this case.
>
> And [the juror] is a well-spoken person and made himself pretty clear and he said that he is—Well, first of all, [the State] told [the juror] that he wanted to keep him on the jury panel and thought he would be a good juror. Part of it was because [the State] thought it was only fair to have someone from the African American community on the jury.
>
> [The juror] said he was depressed about this case, that it was putting pressure on him, and that it was tough; that he did not want to be pushed into being a juror; that it made him uncomfortable; and if he was a juror, he would probably live with regret about the decision that he would make. He commented that probably [the prosecutor] would not understand because he is not part of the black community. But when specifically asked, [the juror] said he could follow the Court's instructions to be fair and impartial and follow only the evidence he heard in the courtroom to reach a verdict.

The State made a motion to strike for cause, I denied the motion to strike for cause. I now see that on the list of jurors with the strikes exercised, the fifth strike exercised by the State was to strike [the juror].

The court then asked both attorneys if those statements summarizing the events that occurred off the record were incorrect or if they needed to be supplemented. Both attorneys agreed the court's summary was correct. Moody's attorney then raised the *Batson* issue on the record.

Moody now contends his counsel was ineffective for failing to establish a prima facie case of purposeful discrimination in the selection of the jury panel.

Moody's trial counsel did make a *Batson* challenge. He established that Moody was a member of a cognizable racial minority and the prosecutor had used a peremptory strike to remove a jury of the same racial minority. Counsel's alleged error involved the failure "to raise an inference that the prosecutor used the strike to exclude" the juror on the account of the juror's race, thus failing to establish the prima facie case. *See Batson*, 476 U.S. at 96.

Even if trial counsel failed to establish the prima facie case, Moody's claim fails because he cannot prove he was prejudiced by his attorney's actions. After trial counsel raised the issue, the prosecutor provided a race-neutral reason explaining the State's use of the strike, stating:

Your Honor, I think anyone listening to what happened in the courtroom would note I like [the juror]. I wanted to keep him as a juror. I know him from his service on the Post Office. He repeatedly told me he knows everything about my case; he knows who my witnesses are, my informants. He knows them, will have to see them on a regular basis, will have to be held accountable for his verdict when he comes out because it is a tight-knit community. He begged to be excused. And I simply, after considering it, said when he has expressed that strong of a feeling, that maybe I should be listening and for that reason did choose to do the strike.

The court then ruled that purposeful discrimination did not occur.

Because the prosecutor responded as though the prima facie case had been established and the burden shifted, and the court ruled on the challenge, Moody cannot establish with a reasonable probability that, but for counsel's actions, the outcome would have been different. *See Everett v. State*, 789 N.W.2d 151, 159–160 (Iowa 2010). Moreover, the State articulated a race-neutral reason for the strike.

***Judgment of Acquittal.*** Moody also contends he received ineffective assistance from trial counsel because counsel failed to challenge the State's interpretation of the money laundering statute. Defense counsel did move for a judgment of acquittal at trial, but on the basis that there was a lack of evidence. Specifically, defense counsel argued that there was no evidence that Moody concealed any funds or converted illegal funds by purchasing any goods.

As we understand Moody's argument on appeal, Moody argues his attorney was ineffective for failing to argue that the proper interpretation of the money laundering statute required the State to prove the money received by Moody in the drug transaction was the proceeds of illegal activity. Because the money was provided to informants by law enforcement, it somehow was not "dirty" money. In support of this argument, Moody contends that both the court and trial counsel misinterpreted the statute because in closing arguments the State argued Moody was guilty of money laundering simply because he accepted money for drugs.

Our view of the charge as shown in the trial information, and as conceded by the State in oral argument, is that the State charged Moody pursuant to Iowa Code section 706B.2(1)(a). Although there are four alternatives of money laundering, the precatory language used in the trial information coincides with alternative (a).

Contrary to Moody's argument, we are convinced the money received by Moody was from an illegal activity although the money was fronted to informants by law enforcement officers. "Unlawful activity" is defined in section 706B.1(5) as:

> [A]ny act which is chargeable or indictable as a public offense of any degree under the laws of the state in which the act occurred or under federal law and, if the act occurred in a state other than this state, would be chargeable or indictable as a public offense of any degree under the laws of this state or under federal law.

Moody has cited no authority for the proposition that the use of money provided by law enforcement somehow makes the drug transaction not an illegal or unlawful activity absent entrapment.[12]

Moody also argues that he could not be guilty of money laundering simply because he accepted money for illegal drugs. He contends his trial counsel was ineffective for failing to address the proper interpretation of the statute. Moody maintains the purpose of the money laundering statute "is to prohibit the proceeds from an illegal activity from entering commerce and being detached

---

[12] Moody contends the drug transaction did not involve "dirty money" but that phrase has different meanings and does not aid Moody's argument. *See United States v. Reynoso-Ulloa*, 548 F.2d 1329, 1332 (9th Cir. 1977) ("money was 'dirty' in that no taxes were paid on it"); *see also Adelson v. Harris*, 973 F.Supp.2d 467, 491–93 (S.D.N.Y. 2013) ("dirty" money may signify that it was obtained by immoral means, but is a concept whose content is "debatable, loose and varying").

and concealed from its original illegal source." 4 Iowa Practice, Criminal Law Sec. 12.6 (2013-2014 ed.). Moody also cites *United States v. Green*, 599 F.3d 360, 373 (4th Cir. 2010), for the proposition that "money laundering occurs when money derived from criminal activity is placed into a legitimate business in an effort to cleanse the money of criminal taint."

Our supreme court has recently summarized principles that aid our analysis, stating:

> The purpose of statutory interpretation is to determine the legislature's intent. We give words their ordinary and common meaning by considering the context within which they are used, absent a statutory definition or an established meaning in the law. We also consider the legislative history of a statute, including prior enactments, when ascertaining legislative intent. When we interpret a statute, we assess the statute in its entirety, not just isolated words or phrases. We may not extend, enlarge, or otherwise change the meaning of a statute under the guise of construction.

*State v. Romer*, 832 N.W.2d 169, 176 (Iowa 2013). Criminal statutes must also be strictly construed, and doubts are resolved in favor of the accused. *Id.* Our legislature provided, "The provisions of this chapter shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting the law." Iowa Code § 706B.3(2).

We agree with Moody that the proper construction of section 706B.2(1)(a) cannot be that he is guilty of money laundering by simply accepting money for illegal drugs. The method of committing money laundering under section 706B.2(1)(a), however, does not specifically require any concealment or cleansing of the proceeds, as argued by Moody's attorney in the motion for

acquittal. *See Brown v. Kerkhoff*, 504 F.Supp.2d 464, 541 (S.D. Iowa 2007) (concluding the alternate method of committing money laundering under this subsection does not require the person to "conceal or disguise the nature of the property").

Moody's contention that he could not be guilty of money laundering simply by receiving the proceeds of a drug transaction is similar to arguments advanced in *United States v. Awada*, 425 F.3d 522 (8th Cir. 2005), and *Frantz v. State*, No. WD 76773, 2014 WL 4547840, at *2–3 (Mo. Ct. App. Sept. 16, 2014). Without diluting this long opinion with all the facts of those two cases, suffice it to say the pertinent principle is that "money laundering statutes criminalize transactions in proceeds, not the transactions that create the proceeds." *Awada*, 425 F.3d at 524. In *Frantz*, the court stated, "Put plainly, the laundering of funds cannot occur in the same transaction through which those funds first become tainted by crime." 2014 WL 4547841, at *2 (citing *United States v. Butler*, 211 F.3d 826, 830 (4th Cir. 2000)). We note that section 706B.2(1)(a) criminalizes conducting a transaction but also knowingly transporting, receiving and acquiring property that constitutes proceeds from a specified unlawful activity as defined by section 706B.1(3). Notwithstanding the broad sweep of our statute, we believe the proper construction of section 706B.2(1)(a) still requires the application of the principle recited in *Awada*.

As observed by our supreme court in *State v. Jacobs*, 607 N.W.2d 679, 689 (Iowa 2000), a case involving several thefts from a client, "Each time the defendant took funds from his client he committed a theft. When he used cashier's checks and money orders to conceal the source of his funds he

committed fraudulent practices." Similarly, when an individual provides illegal drugs to another person he or she is guilty of delivery. When that individual performs illegal drug transactions on a continual basis constituting a specified unlawful activity, he or she is guilty of ongoing criminal conduct. *See* Iowa Code §§ 706A.1(5), 706A.2(4). When the individual aids an unspecified unlawful activity by knowingly transporting, receiving or acquiring the activity's property or conducts a transaction involving the property, the individual is guilty of money laundering. As observed by our supreme court in *Jacobs*, one individual can be guilty of the predicate offense as well as additional offenses. 607 N.W.2d at 688–89; *see also State v. Reed*, 618 N.W.2d 327,335 (Iowa 2000) (concluding that it saw "nothing in our ongoing-criminal-conduct statute that suggests our legislature intended to preclude separate convictions and sentences for the ongoing criminal conduct and underlying crimes used to establish such conduct").

During the discussion regarding the jury instructions, the district court concluded the money laundering statute encompassed a delivery where money was exchanged for the illegal drugs because one can be guilty of delivery without any exchange of money or property. We believe this misconstrues the purpose of the statute. Rather, we believe the evil prohibited by the money laundering statute is performing an act that lends aid to the specified unlawful activity and thus, the transaction in proceeds is criminalized. *See Awada*, 425 F.3d at 524. The statute seeks to criminalize activities supporting the specified unlawful activity, not a single sale of illegal drugs, because such a sale or transaction is encompassed by other statutory provisions.

Here, the evidence reflected Moody received proceeds from a single drug transaction and may have been involved in a specified unlawful activity of illegal drug sales. But there is no evidence that he otherwise aided the specified unlawful activity by transporting, receiving, or otherwise acquiring proceeds separate from the predicate offense of delivery of cocaine.

We further conclude if defense counsel had raised the issue of the proper interpretation of section 706B.2(1)(a), the result of the proceeding would have been different in that the charge of money laundering would have been dismissed.[13] [14] Finding no strategy or other excuse, an essential duty was not performed by counsel, and the conviction for money laundering must be reversed.

## IV. Conclusion

Because we find the evidence in the application for the search warrant was not stale and the warrants were supported by probable cause, we affirm the district court's ruling on the motion to suppress. We find the challenged evidence was, in part, admissible as admissions by a party-opponent. The text message evidence was also admissible to prove a disputed factual issue concerning the money laundering charge. We find trial counsel was not ineffective for the alleged failure to establish a prima facie case of purposeful discrimination after the State's peremptory strike of a minor jury. However, we find Moody's trial

---

[13] We also note that the marshalling instruction permitted a guilty verdict based upon the receipt of proceeds from a single illegal drug transaction and failed to recite any obligation upon the State to prove a specified unlawful activity.

[14] Defense counsel briefly touched upon the appropriate argument in his objection to the marshalling instruction on the money laundering charge, but the thrust of his objection was that the instruction must include language the defendant committed the act with the intent to conceal the source of the property or proceeds.

counsel was ineffective in failing to raise in the motion for acquittal the proper interpretation of section 706B.2(1)(a). If this issue had been raised, the money laundering charge would have been dismissed. Accordingly, we reverse Moody's conviction for money laundering and remand the case for dismissal of that charge. We affirm all other convictions.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**