# IN THE SUPREME COURT OF IOWA

No. 14–0019

Filed May 6, 2016

**STATE OF IOWA,**

Appellee,

vs.

**TOBY RYAN RICHARDS,**

Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Scott County, Mark R. Fowler, District Associate Judge.

A defendant in a criminal case seeks further review after the court of appeals affirmed his conviction for domestic abuse assault, contending the district court improperly admitted evidence of prior altercations in violation of Iowa Rule of Evidence 5.404(*b*). **COURT OF APPEALS DECISION AND DISTRICT COURT JUDGMENT AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Shellie L. Knipfer, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik and Alexandra Link (until withdrawal), Assistant Attorneys General, Michael J. Walton, County Attorney, and Elizabeth Cervantes, Assistant County Attorney, for appellee.

**HECHT, Justice.**

On trial for domestic abuse assault, Toby Richards asserted he acted in self-defense after his then-girlfriend, Trish Poell, instigated the confrontation. The State offered evidence about previous incidents during which Richards allegedly slapped Poell, struck her neck with his cell phone, and threw her against a refrigerator. While these other acts could be viewed as textbook examples of propensity evidence, the State asserted they were admissible because they were probative of Richards's intent in committing the charged assault. *See* Iowa R. Evid. 5.404(*b*) (providing evidence of other acts is inadmissible to prove conformity with character, but may "be admissible for other purposes, such as proof of . . . intent").

Richards objected, contending that because he had asserted self-defense, his intent was not genuinely at issue, so the real purpose of the other-acts testimony was to establish his violent propensity and suggest that if he had assaulted Poell before, he must have done so again. Additionally, Richards contended the evidence was unfairly prejudicial. The district court admitted the evidence and the jury ultimately convicted Richards of domestic abuse assault. The court of appeals affirmed his conviction because it concluded the district court properly admitted the other acts evidence. On further review, we find no abuse of discretion in the district court's ruling. We therefore affirm.

## I. Background Facts & Proceedings.

On February 2, 2013, Poell was visiting Richards at his mother's house in Davenport, where Richards lived. Both Poell and Richards were napping, Poell in bed and Richards on a couch in the same room. Beyond those facts, however, accounts of the day's events diverge significantly.

**A. Poell's Testimony.** According to Poell, she awoke to discover a message on her cell phone from another woman—the mother of Richards's daughter—that stated, "[I]f you knew what your man does when you're not around." Poell responded that she was always around, and the other woman replied, "[Y]ou weren't Wednesday night when he was in my bed."

Upset at these allegations of infidelity, Poell approached Richards, who was still sleeping on the couch, and "tapped him on his shoulder" to wake him up and tell him the relationship was over. When Richards asked why, Poell told him about the messages from the other woman and revealed she had also discovered a message from Richards to the other woman asking her to call him. Richards tried to explain the messages, but Poell did not want to listen. Richards pushed Poell onto the bed and lay on top of her, holding her down for a length of time Poell believed was at least five minutes.

Eventually Richards released Poell, and she began to retrieve her coat and car keys. Richards implored Poell not to leave because his children referred to her as their mom. Poell responded, "[F]uck [them]. I don't care. I want to go. It's over." After that remark, Richards began punching Poell's head, face, and arms. Poell threw her hands up to protect her face and tried to push Richards off her. Although the altercation continued for some time, eventually Richards "just stopped hitting." At that point, Poell quickly left the house, locked herself in her car, and waited for police to arrive.

**B. Richards's Testimony.** Richards contended Poell was the aggressor. He disputed that Poell woke him up by tapping his shoulder. Instead, he asserted, Poell punched his forehead and then immediately began to use her hands and fists to hit him, including clawing at

Richards with her fingernails. Poell's physical contact "wasn't really hurting" Richards, but he eventually "got tired of it," so he grabbed Poell's wrists as he tried to explain any communication between him and the other woman was innocuous.

The message from him to the other woman asking her to call him, Richards explained, was a necessary communication because it involved a parenting question about Richards's daughter, but it angered Poell because she had arbitrarily forbidden Richards from contacting the other woman for any reason. When Poell discovered the message, she simply refused to accept Richards's parenting question as a valid reason for the communication even though the message itself did not imply Richards had been unfaithful to Poell. Richards did not testify about the message stating he was in the other woman's bed.

As the physical altercation continued, the parties fell onto the bed. Eventually Richards's mother intervened and convinced Richards to release his hold on Poell. Richards's mother then sat with Poell on the couch and explained to Poell that any communication between Richards and the other woman was only about Richards's daughter. When Poell responded with profanity toward Richards's children, Richards decided he had heard enough. He grabbed Poell's wrists again and told her, "Get the F out of my house. . . . I don't want nothing to do with you anymore." He pulled Poell off the couch into a standing position and followed her out the door as she left.

**C. Other Testimony.** A few other witnesses testified, including Richards's mother and both Davenport police officers who responded to a 911 call about the dispute between Richards and Poell.

Officer Hagedorn testified that when he arrived, he spoke with Richards. Richards admitted to Officer Hagedorn that he had shoved

Poell and pushed her down on the bed to keep her from continuing to hit him, but insisted he had not struck her. Officer Hagedorn observed some scratches on Richards's chest and face, which were unquestionably injuries but, Officer Hagedorn stated, were not necessarily consistent with absorbing a punch. Officer Welch was working with Officer Hagedorn that day and, upon arrival, spoke with Poell. He noticed Poell was bleeding and had fresh facial injuries.

After conversing with Richards, Poell, and Richards's mother, the officers arrested Richards, sent Poell home, and dispatched an evidence technician to her house to photograph her injuries. The photos, taken about forty-five minutes after the altercation, show Poell with bruises on her hands and nose, a swollen cheek, scratches on her face, and blood running down her nose. At the police station, officers also photographed Richards, and those photos corroborate the officers' testimony as to the extent of his injuries. Richards suggested all of Poell's injuries, including bruises on her hands and face, were self-inflicted because "[s]he was going pretty wild with her hands," or may have been preexisting bruises from Poell's cleaning business because "[s]he's a very physical worker."

Richards's mother also provided her recollection of the incident. Upon hearing some screaming, she ran into the room and saw Richards and Poell careening onto the bed, with Poell striking Richards in the face, chest, and neck. Although Richards and Poell stopped physically scuffling for a brief time, they kept arguing, and eventually Richards told Poell, "[J]ust leave." Richards's mother did say she saw Richards striking Poell "a little bit," but did not believe he was doing any more than was necessary to stop Poell from hitting him.

**D. Legal Proceedings.** The State charged Richards with domestic abuse assault causing bodily injury. *See* Iowa Code § 236.2(2)(*d*) (2013);

*id.* §§ 708.1(1), .2A(1), .2A(2)(*b*). Richards filed a notice of intent to assert self-defense. He also filed a motion in limine seeking to exclude evidence about his criminal record or previous contacts with police. The State resisted the motion and additionally asserted "past uncharged instances of domestic violence that the Defendant has perpetrated against the victim in this case" were admissible to prove Richards's intent. *See State v. Taylor*, 689 N.W.2d 116, 126 (Iowa 2004) (concluding other acts evidence was admissible to prove intent because a "defendant's prior conduct directed to the victim of a crime, whether loving or violent, . . . is highly probative of the defendant's probable motivation and intent in subsequent situations"). Richards responded that evidence of uncharged incidents is inadmissible propensity evidence under rule 5.404(*b*). The court reserved ruling on the matter to allow Richards to depose Poell and determine the details of the uncharged incidents the State intended to present.

In her deposition, Poell alleged that in four separate incidents within the previous year, Richards had slapped her face, thrown his cell phone at her neck, angrily argued with other members of her family, and thrown her against a refrigerator. In response to Richards's renewed motion to exclude the other acts evidence, the State contended Richards's decision to assert self-defense brought intent into dispute, and so the evidence of other acts was admissible to prove Richards's intent—especially because domestic violence can be cyclical and juries should see a full picture of the parties' relationship, not a sanitized version. Furthermore, the State asserted the evidence was admissible to rebut Richards's self-defense theory.

The district court ruled the evidence admissible and overruled Richards's renewed objections at trial. However, the court curtailed the

scope of the other acts evidence to avoid the danger of allowing inflammatory emotional testimony that might prejudice the jury and prompt it to decide the case on an improper emotional basis. *See State v. Putman*, 848 N.W.2d 1, 15 (Iowa 2014) ("[C]oncerns about prejudice to a defendant might be eased by narrowing the scope of the prior-bad-acts evidence presented to the jury."). Poell testified consistent with her deposition testimony. When the court submitted the case to the jury, the jury instructions included a limiting instruction specifically cautioning that Richards was "not on trial for those [other] acts" and that the jury was to consider the evidence "only . . . to show motive or intent."

The jury found Richards guilty of domestic abuse assault causing bodily injury. Richards appealed, and we transferred the case to the court of appeals. The court of appeals concluded the district court did not abuse its discretion in admitting evidence of three prior altercations between Richards and Poell. The court further concluded evidence of a prior instance of conflict between Richards and members of Poell's family was not relevant but the admission of that evidence was harmless error. Richards sought further review, and we granted his application.

## II.  Scope of Review.

"In considering whether the trial court properly admitted prior-bad-acts evidence, we apply an abuse-of-discretion standard of review." *Taylor*, 689 N.W.2d at 124. The abuse-of-discretion standard means "we give a great deal of leeway to the trial judge who must make [a] judgment call." *State v. Newell*, 710 N.W.2d 6, 20–21 (Iowa 2006). "If an abuse of discretion occurred, reversal will not be warranted if error was harmless." *State v. Reynolds*, 765 N.W.2d 283, 288 (Iowa 2009).

### III. Analysis.

In *State v. Sullivan*, we described the three-step other-acts analysis we undertake in determining whether proffered evidence is admissible under rule 5.404(*b*). 679 N.W.2d 19, 25 (Iowa 2004). The three steps are (1) "the evidence must be relevant and material to a *legitimate* issue in the case other than a general propensity to commit wrongful acts"; (2) "there must be clear proof the individual against whom the evidence is offered committed the bad act or crime"; and (3) if the first two prongs are satisfied, "the court must then decide if [the evidence's] probative value is substantially outweighed by the danger of unfair prejudice to the defendant." *Id.*

Applying that test here, we conclude the evidence of three instances of Richards's other acts was relevant and material to a legitimate issue in this case notwithstanding the justification defense. Furthermore, we conclude Poell's testimony is sufficiently clear proof of the other acts, and we determine any prejudice arising from the admission of the evidence did not substantially outweigh its probative value.[1]

---

[1]The court of appeals characterized the third prong as requiring the evidence to be "substantially more probative than prejudicial." While the difference is subtle, phrasing the standard this way creates a different analytical framework for admissibility than is required under rule 5.404(*b*). *Cf.* Iowa R. Evid. 5.609(*b*) (excluding evidence of convictions more than ten years old "unless the court determines . . . that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect").

We have sometimes expressed the test the way the court of appeals did in this case. *See State v. Barnes*, 791 N.W.2d 817, 825 (Iowa 2010) ("[A] determination must be made as to whether the probative value of the evidence on the issue for which it is offered substantially outweighs the danger of unfair prejudice to the defendant."); *State v. Duncan*, 710 N.W.2d 34, 40 (Iowa 2006) ("[D]oes the probative value . . . substantially outweigh the danger of unfair prejudice pursuant to the balancing test under Iowa Rule of Evidence 5.403?"). In the vast majority of our cases analyzing evidence under Rule 5.404(*b*), however, we "balance the evidence's probative value with the danger of unfair prejudice under Iowa Rule of Evidence 5.403" and determine whether the prejudice

**A.  *Taylor* and Other Relevant Cases.**  *Taylor* is the foundation of the State's argument and of the district court's decision to admit the other acts evidence in this case.  *Taylor* also involved domestic abuse assault causing bodily injury.  689 N.W.2d at 120.  Taylor was under a protective order prohibiting him from contacting his wife.  *Id.*  However, he followed his wife, who was a passenger in a friend's van, into a church parking lot, "got out of his car, and began pounding on [the] vehicle, yelling" and swearing at his wife.  *Id.* at 120–21.  After returning to his own car and positioning it so that it blocked the van from driving away, he jumped on the van's hood, cracked the windshield, and approached the passenger side window to pound on it.  *Id.* at 121.  The window broke and Taylor "yanked his wife . . . out through the broken window" despite some difficulty maneuvering her through her buckled seatbelt.  *Id.*

Taylor's defense to the domestic abuse assault charge "was that he . . . only wanted to talk to his wife" and so he lacked intent to injure or cause fear.  *See id.* at 125.  During trial, the court admitted evidence of two previous altercations—one in which Taylor shoved his wife into a door and one in which he threatened to kill himself in front of her after punching a hole in the kitchen door.  *Id.* at 122–23 & n.3.  "The court

---

substantially outweighs probative value.  *Reynolds*, 765 N.W.2d at 290; *see, e.g.*, *Putman*, 848 N.W.2d at 9–10, 14–15; *State v. Elliott*, 806 N.W.2d 660, 675 (Iowa 2011); *State v. Nelson*, 791 N.W.2d 414, 425 (Iowa 2010); *State v. Cox*, 781 N.W.2d 757, 761 (Iowa 2010); *State v. Shanahan*, 712 N.W.2d 121, 137 (Iowa 2006); *Newell*, 710 N.W.2d at 20; *State v. Henderson*, 696 N.W.2d 5, 11 (Iowa 2005); *Taylor*, 689 N.W.2d at 124; *Sullivan*, 679 N.W.2d at 25; *State v. Rodriquez*, 636 N.W.2d 234, 239–40 (Iowa 2001); *State v. Mitchell*, 633 N.W.2d 295, 298 (Iowa 2001); *State v. Castaneda*, 621 N.W.2d 435, 440 (Iowa 2001); *State v. Barrett*, 401 N.W.2d 184, 187 n.2 (Iowa 1987).

Despite the language the court of appeals used here, it ultimately reached the correct result.  Nonetheless, we take this opportunity to clarify that the proper balancing in other-acts cases is the same test described in Rule 5.403, and our language in *Barnes* and *Duncan* suggesting otherwise was simply imprecise.

admitted this evidence on the issue of intent" over Taylor's objection under rule 5.404(*b*). *Id.* at 123.

We concluded Taylor's failure-of-proof defense placed intent at issue. *See id.* at 124–25. We further explained the importance of prior acts in the domestic violence context:

> [T]here is a logical connection between a defendant's intent at the time of a crime, when the crime involves a person to whom he has an emotional attachment, and how the defendant has reacted to disappointment or anger directed at that person in the past, including acts of violence, rage, and physical control. In other words, the defendant's prior conduct directed to the victim of a crime, whether loving or violent, reveals the emotional relationship between the defendant and the victim and is highly probative of the defendant's probable motivation and intent in subsequent situations.

*Id.* at 125. Put another way, "The relationship between the defendant and the victim, especially when marked by domestic violence, sets the stage for their later interaction." *Id.* at 128 n.6.

Because there was conflicting testimony among witnesses about the incident, we concluded "[e]vidence reflecting the nature of the relationship between the defendant and the victim would be crucial to a fact finder resolving the inconsistencies." *Id.* at 127; *see id.* at 129 ("[T]he witnesses' accounts of the event were remarkably at odds. Therefore, there was clearly a need for evidence that would clarify the circumstances of the defendant's conduct and thereby shed light on his intent."). The other acts, "while certainly illustrative of a propensity to use violence, also reflect[ed Taylor's] emotional relationship with his wife, which . . . [wa]s a circumstance relevant to his motive and intent on the day in question." *Id.* at 128; *see also State v. Kellogg*, 263 N.W.2d 539, 542 (Iowa 1978) (considering it "firmly established in our law" that when a defendant is charged with committing a crime against his or her

spouse, other acts regarding the spouse are admissible "as bearing on the defendant's quo animo"); *State v. O'Donnell*, 176 Iowa 337, 352, 157 N.W. 870, 875–76 (1916) ("[L]ong-existing discord and treatment were competent to show the mental attitude of the husband and wife . . . on the date of the alleged crime . . . .").

*Taylor* is not our only case involving admissibility of other acts of domestic violence under rule 5.404(*b*), however. In *State v. Rodriquez*, the jury heard evidence "about prior occasions of abuse" by a defendant charged with attempted murder, willful injury, kidnapping, and assault against his girlfriend. 636 N.W.2d 234, 238 (Iowa 2001). We concluded evidence of prior assaults was relevant to the defendant's intent because that evidence—which detailed "prior intentional, violent acts towards the victim"—made it "more probable that [the defendant] intended to cause [the victim] serious injury" on the day of the assault for which he was being tried. *Id.* at 242. In balancing probative value against prejudice, we noted the evidence was highly probative because only the defendant and the victim were present, so "the need for other evidence . . . was substantial" given "the 'he said/she said' nature of th[e] disagreement." *Id.* Furthermore, the state minimized possible prejudice because it "did not elicit great detail about the prior assaults and spent a relatively small amount of time on this line of questioning." *Id.* at 243. We ruled the district court correctly admitted the evidence. *Id.* at 243–44.

Later, in *Newell*, when the defendant had called the victim derogatory names, head-butted her, and inflicted bruises on her arms, we concluded those other acts were relevant and admissible in determining malice aforethought in a murder prosecution. 710 N.W.2d

at 21. Similarly, in *State v. Richards*,[2] we concluded evidence about the defendant pushing and shoving the victim and putting a cane to her neck "were relevant to show [the defendant] had been angry enough at [the victim] in the recent past to commit acts of violence against her." 809 N.W.2d 80, 93–94 (Iowa 2012). We confronted the possible propensity inference and concluded the other acts evidence established "not that Richards was a violent man generally, but rather that he was explosive toward [the victim] specifically." *Id.* at 94; *accord State v. Jones*, 955 A.2d 1190, 1196 (Vt. 2008) (agreeing with *Taylor* and concluding when "prior bad acts were perpetrated against the same victim, the evidence serves essentially the same purpose as an admission of intent to harm that particular victim, rather than establishing defendant's general propensity for violence"). Together with *Taylor*, these cases form the platform from which we dive into the three-pronged *Sullivan* analysis.

**B. Legitimate Disputed Issue.** *Sullivan*'s emphasis on the question whether the other acts evidence is relevant to a "legitimate issue" is significant. 679 N.W.2d at 25. That emphasis is significant because "the jury is less likely to concentrate on propensity if there is a bona fide dispute on mens rea." *State v. Henderson*, 696 N.W.2d 5, 16 (Iowa 2005) (Lavorato, C.J., concurring specially). But if there is no real dispute, "the only relevancy of such evidence is to show the defendant's criminal disposition or propensity to commit the very crime for which the defendant is on trial." *Id.*; *see also Thompson v. United States*, 546 A.2d 414, 422 (D.C. 1988) ("Where intent is merely a formal issue derived from

---

[2]The defendant in this case is a different Richards, but the earlier *Richards* case involved a similar issue concerning the admissibility of prior acts of domestic violence.

the elements of the offense, and is not being controverted, the argument for receiving [other acts] evidence falters."").

Of course, most crimes include a mens rea element, and admitting other acts evidence "whenever the prosecutor offers uncharged misconduct to support an ultimate inference of mental intent . . . creates a risk of prejudice to the accused." *Sullivan*, 679 N.W.2d at 27; *see also Thompson*, 546 A.2d at 421 ("If the 'intent exception' warranted admission of evidence of a similar crime simply to prove the intent element of the offense on trial, the exception would swallow the rule."). Thus, we require prosecutors to "articulate a valid, noncharacter theory of admissibility" in order to satisfy the first prong (i.e., relevance) of the other-acts test. *Sullivan*, 679 N.W.2d at 28.

Intent is one valid, noncharacter theory of admissibility. *See* Iowa R. Evid. 5.404(*b*). However, the State may only utilize other acts evidence to prove intent if intent is legitimately disputed. In our previous cases involving other acts of domestic violence, each of the defendants directly disputed intent. For example, the defendant in *Rodriquez* disputed the intent elements of murder and kidnapping. 636 N.W.2d at 242. The defendant in *Newell* "portrayed [the] death as accidental." 710 N.W.2d at 22. The defendants in those cases did not assert self-defense as Richards does here. Thus, we must determine if Richards's assertion of self-defense eliminated any legitimate dispute about his intent. If it did, the other acts evidence here fails the relevance prong of the *Sullivan* test.

When a defendant raises the issue of self-defense,

> the burden rests upon the State to prove—beyond a reasonable doubt—that the alleged justification did not exist. The State can meet its burden by proving any of the following facts:

    1.  The defendant initiated or continued the incident resulting in injury; or

    2.  The defendant did not believe he was in imminent danger of death or injury and that the use of force was not necessary to save him; or

    3.  The defendant had no reasonable grounds for such belief; or

    4.  The force used was unreasonable.

*State v. Rubino*, 602 N.W.2d 558, 565 (Iowa 1999) (citation omitted).

We have not directly confronted the issue of whether a defendant who asserts self-defense concedes the intent element of a crime, but we have commented in dicta on the question and a concurring opinion has also explored it. For example, in *State v. Carey*, although we were not considering a question of admissibility of other acts evidence under rule 5.404(*b*) and not deciding whether a defendant's assertion of self-defense eliminated the State's burden to prove the element of intent, we characterized the effect of the defendant's justification defense as admitting "every material element of the crimes with which he was charged; the State only bore the burden of proving [he] was not justified in his actions." 709 N.W.2d 547, 560 (Iowa 2006); *see also Douglas v. People*, 969 P.2d 1201, 1206–07 (Colo. 1998) (en banc) (acknowledging a self-defense claim "in effect" admits the mens rea of the crime). Thus, one conception of self-defense is that it effectively admits the elements of the crime, thereby removing intent entirely from dispute.

Closer to the issue in this case, in *State v. Matlock*, we considered whether a defendant's other violent acts were admissible to prove the intent element of a willful injury charge. 715 N.W.2d 1, 4–5 (Iowa 2006). Matlock defended against the charges by claiming justification. *See id.* at 3. We addressed the effect of the justification defense in a footnote:

> [T]he intent element involved in the jury's consideration of the justification defense required the State to prove that defendant could not have a reasonable belief that the force he used was necessary to avoid imminent danger of death or serious injury. Because this is an entirely objective standard, it did not involve proof of a specific intent on defendant's part but, rather, was dependent on the facts of the altercation as viewed by the jury. Consequently, *the affirmative defense provides no issue* concerning defendant's intent for which evidence of other bad acts might serve as evidence under rule 5.404(*b*).

*Id.* at 6 n.1 (emphasis added).

Finally, a concurring opinion in *Reynolds* asserted intent is not legitimately disputed in a self-defense case:

> Reynolds admits he assaulted the victim, but raises the defense of self-defense. . . .
>
> In this case, the only legitimate factual issue in dispute was who initiated the incident that resulted in injury to the victim. None of the other-acts evidence the State attempted to introduce . . . is relevant to who initiated the incident.

765 N.W.2d at 295 (Wiggins, J., specially concurring) (citation omitted).

Relatedly, we have concluded that, irrespective of intent, other acts evidence is admissible to rebut a self-defense theory. *State v. Shanahan*, 712 N.W.2d 121, 137–38 (Iowa 2006). Although the other acts in *Shanahan* occurred *after* the alleged crime and were not acts of domestic violence, they were admissible to address a murder defendant's self-defense theory and show her actions were "inconsistent with a claim of self-defense." *Id.* at 137.

Courts in other jurisdictions have also addressed the interplay between self-defense and the rule prohibiting evidence of other assaultive acts. For example, some courts conclude, similar to *Shanahan*, that other acts are admissible to rebut defendants' self-defense claims—usually by proving that the defendant could not reasonably have feared

the victim or that he or she acted inconsistently with a reactionary defensive outburst. *See, e.g., United States v. Haukaas*, 172 F.3d 542, 544 (8th Cir. 1999) ("[T]he government was entitled to introduce the Rule 404(b) evidence . . . to rebut the claim of self-defense."); *Yusem v. People*, 210 P.3d 458, 464 (Colo. 2009) (en banc) ("[Rule] 404(b) evidence can properly be used to rebut a claim of self-defense."); *Collins v. State*, 966 N.E.2d 96, 105 (Ind. Ct. App. 2012) ("Where a defendant claims self-defense, the State may use evidence of the defendant's prior misconduct to disprove that argument that the victim was the initial aggressor."); *State v. Dukette*, 761 A.2d 442, 446 (N.H. 2000) ("By filing a notice of self-defense, the defendant has placed her state of mind at issue."); *Robinson v. State*, 844 S.W.2d 925, 929 (Tex. App. 1992) (concluding other acts "may be used to rebut a defensive theory, such as self-defense, even though this purpose is not mentioned" in the Texas equivalent to rule 5.404(*b*)); *see also* Lisa A. Linsky, *Use of Domestic Violence History Evidence in the Criminal Prosecution: A Common Sense Approach*, 16 Pace L. Rev. 73, 86 (1995) (considering other acts "particularly effective in refuting the defense of justification").

*Dukette* provides a thorough roadmap of the rationale for admitting other acts evidence in response to a justification defense. *See Dukette*, 761 A.2d at 446–47. The case involved murder, not merely assault, but the defendant and victim were in a romantic relationship. *See id.* at 444. The New Hampshire Supreme Court ruled evidence of previous assaults against the victim were admissible. *Id.* at 447. The other acts were relevant to a disputed issue—intent, which the defendant put at issue by raising self-defense. *Id.* at 446. There was a sufficient logical connection between the other acts and the defendant's state of mind because the other acts and charged conduct involved the same victim and occurred

under similar circumstances following a confrontation. *Id.* The other acts "were not so removed in time as to render them irrelevant" because they occurred within three years of the charged conduct. *See id.* Finally, "evidence that the defendant previously committed unprovoked assaults upon the alleged victim to which the alleged victim did not respond violently undermine[d] the defendant's argument that she reasonably believed the alleged victim was about to use unlawful . . . force against her." *Id.* at 446–47.

On the other hand, some courts conclude that even if self-defense places the defendant's intent at issue, other acts evidence is inadmissible because the inference required to demonstrate intent through prior acts is indistinguishable from the impermissible propensity inference. For example, in *United States v. Commanche*, the government charged Commanche with assault causing serious bodily injury, and he asserted self-defense. 577 F.3d 1261, 1263 (10th Cir. 2009). The trial court admitted evidence that the defendant had two prior aggravated battery convictions. *See id.* The jury rejected the self-defense claim and convicted Commanche of two counts of assault. *Id.* On appeal from those convictions, the court of appeals considered "the admissibility under Federal Rule of Evidence 404(b) of bad act evidence that bears on a defendant's intent." *Id.* It concluded "such evidence is inadmissible because the jury must necessarily use it for an impermissible purpose (conformity) before it can reflect on a permissible purpose (intent)" and the other acts evidence would reflect on intent "only if a jury first infers that [the defendant] is prone to violence." *Id.* The court acknowledged the intuitive appeal of using other acts to demonstrate intent but concluded the reasoning a jury would undertake in considering the evidence was inextricable from the improper propensity purpose:

> [T]he present case is not one in which intent is proven circumstantially based on repeated substantially similar acts. There is no indication in the record that Commanche claimed self-defense on the other two occasions. Thus, the aggravated battery convictions make it no more likely that Commanche reacted with disproportionate force during this encounter . . . .
>
> By contrast, the details of Commanche's prior aggravated battery convictions demonstrate nothing about his intent; they simply show that he is violent. It may be that Commanche's violent character would lead a jury to conclude that his fear was unreasonable or that he acted with disproportionate force and thus cannot properly claim self defense. Although this reasoning may have intuitive appeal, it is precisely what Rule 404(b) prohibits—a chain of inferences dependent upon the conclusion that Commanche has violent tendencies and acted consistent with those tendencies during the fight.

*Id.* at 1269 (citation omitted). Like *Commanche*, there is no indication in this record that Richards claimed self-defense on the prior occasions. *See id.*

Similarly, in *Yusem*, the Colorado Supreme Court considered the "complex question" about "whether . . . prior act evidence is logically relevant" independent of the propensity inference. 210 P.3d at 466. The defendant was charged with menacing (i.e., threatening someone with a weapon). *Id.* at 461 & n.4. The trial court admitted evidence that the defendant had threatened someone while wearing (but not brandishing) a weapon on a previous occasion. *See id.* at 460. Though the Colorado Supreme Court acknowledged that other acts evidence may be offered to rebut a self-defense claim, it ultimately concluded the particular evidence in the case before it was not admissible:

> The People contend the evidence is relevant to prove Yusem's mental state—whether he intended to menace the victim or acted in self-defense—and therefore is independent of the prohibited inference that Yusem has a bad character and acted in conformity with that character. We disagree. A jury cannot reasonably conclude that Yusem was more likely to menace the [victim] and less likely to act in self-defense

without relying on the inference that Yusem bullied someone in the past while wearing a gun and so likely bullied someone again by brandishing a gun. Thus, the inference, at best, that may be drawn from the prior act is impossible to distinguish from the inference that Yusem has a bad character.

*Id.* at 464, 466.

The Indiana courts have developed a third approach. Indiana follows "a narrow construction of the intent exception" to the prohibition against other acts evidence. *Wickizer v. State*, 626 N.E.2d 795, 799 (Ind. 1993). As the Indiana Supreme Court has explained, that state's equivalent to Rule 5.404(*b*)

does not authorize the general use of prior conduct evidence as proof of the general or specific intent element in criminal offenses. To allow the introduction of prior conduct evidence upon this basis would be to permit the intent exception to routinely overcome the rule's otherwise emphatic prohibition against the admissibility of other crimes, wrongs, or acts to prove the character of a person in order to show action in conformity therewith. In this context, admission of prior bad acts would frequently produce the "forbidden inference" . . . .

The intent exception . . . will be available when a defendant goes beyond merely denying the charged culpability and affirmatively presents a claim of particular contrary intent.

*Id.* Under this narrow construction of the intent exception, self-defense asserts a claim that the defendant acted with a *different* intent than that asserted by the State. In particular, those asserting self-defense claims contend they acted with the intent to prevent harm to themselves. *Evans v. State*, 727 N.E.2d 1072, 1080 (Ind. 2000); *see also Douglas*, 969 P.2d at 1206–07.

We conclude the Indiana formulation best describes the effect of a self-defense claim on the admission of other acts evidence, and we therefore adopt it. Intent remains a legitimate matter of dispute even when the defendant asserts self-defense—at least to the extent the State

claims the defendant did not believe he was in imminent danger of death or injury and that the use of force was not necessary to protect him. We acknowledge our dicta in *Carey* and *Matlock* suggest a self-defense claim removes intent from dispute and precludes the State from offering other acts evidence for that purpose. *See Matlock*, 715 N.W.2d at 6 n.1; *Carey*, 709 N.W.2d at 560. But we conclude that broad characterization of the effect of self-defense cannot be correct, because it would in effect mean defendants asserting the defense stipulate that the alleged crime was committed if the State disproves the defense. We decline to make the effect of asserting self-defense so muscular that it eliminates the burden of proof on all elements of the crime in the State's case-in-chief.

While the rationale of the *Commanche* and *Yusem* courts is compelling, we distinguish those cases because the victims of the other acts proved in those cases were not the victims of the charged crimes. *See Commanche*, 577 F.3d at 1264; *Yusem*, 210 P.3d at 461–62. Our own cases involving other acts against the same victim have concluded such evidence is "highly probative" when, as here, the prior relationship between the defendant and the victim was characterized by acts of domestic violence. *Taylor*, 689 N.W.2d at 123, 125; *see also Richards*, 809 N.W.2d at 93; *Newell*, 710 N.W.2d at 21; *cf. State v. Cox*, 781 N.W.2d 757, 769 (Iowa 2010) (holding, in a sexual abuse case governed by a statute expressly permitting propensity evidence, that "it was improper for individuals *other than the victim* . . . to testify regarding prior acts" (emphasis added)). We continue to adhere to them.

"In a prosecution for assault the State has the burden of proving beyond a reasonable doubt that the defendant was not acting in self defense." *State v. Sharkey*, 311 N.W.2d 68, 72 (Iowa 1981); *accord State v. Dunson*, 433 N.W.2d 676, 677 (Iowa 1988). Because we conclude a

self-defense claim does not categorically remove the defendant's intent from dispute, the other acts evidence here was relevant to a legitimate disputed issue. It was specifically probative of whether Richards acted— as he claimed—in furtherance of a belief that he needed to protect himself from imminent injury at Poell's hands. *See Sullivan*, 679 N.W.2d at 25. We conclude Richards's self-defense theory was a legitimately disputed issue to which the other acts evidence was relevant in this case. *See Shanahan*, 712 N.W.2d at 137–38. We now turn to the other elements of the *Sullivan* test.

**C. Clear Proof.** "[A] victim's testimony, standing alone, satisfies the requirement of clear proof." *State v. Jones*, 464 N.W.2d 241, 243 (Iowa 1990); *see also Taylor*, 689 N.W.2d at 130 ("[I]t is not required that the prior act be established beyond a reasonable doubt, nor is corroboration necessary."). Poell's testimony constituted clear proof of the other alleged acts under the circumstances presented here.

**D. Balancing Probative Force Against Danger of Prejudice.** In *Taylor*, we noted the factors we consider in balancing probative force against the danger of unfair prejudice:

> [T]he court should consider the need for the evidence in light of the issues and the other evidence available to the prosecution, whether there is clear proof the defendant committed the prior bad acts, the strength or weakness of the evidence on the relevant issue, and the degree to which the fact finder will be prompted to decide the case on an improper basis.

*Taylor*, 689 N.W.2d at 124.

We readily acknowledge juries would probably not like someone whom they conclude has repeatedly assaulted a significant other and therefore might develop a desire to punish. *Cf. State v. Liggins*, 524 N.W.2d 181, 188–89 (Iowa 1994) (acknowledging juries who discover a

defendant is a drug dealer may have an "instinct to punish drug dealers"). We also acknowledge Richards had a jury trial, not a bench trial, which means the fact finder is more susceptible to deciding the case on an improper basis. *See Taylor*, 689 N.W.2d at 130 ("Clearly the likelihood of an improper use of the evidence is reduced by the fact that the present case was tried to the court."); *State v. Casady*, 491 N.W.2d 782, 786 (Iowa 1992) (concluding prejudicial effect from other acts evidence "is reduced in the context of a bench trial"). Yet, in this case, the district court carefully circumscribed the scope of the other acts testimony and thereby limited its potential prejudicial impact. *See Rodriquez*, 636 N.W.2d at 243 (concluding there was little danger of unfair prejudice from other acts evidence because "[t]he State did not elicit great detail about the prior assaults and spent a relatively small amount of time" on the questions).

The district court prudently followed "the better practice" and gave the jury a limiting instruction curtailing the danger of unfair prejudice. *State v. Bayles*, 551 N.W.2d 600, 608 (Iowa 1996); *see also State v. Wade*, 467 N.W.2d 283, 284–85 (Iowa 1991). Although limiting instructions will not *always* alleviate the danger of unfair prejudice, *see State v. Elliott*, 806 N.W.2d 660, 674 n.4 (Iowa 2011), we conclude this one did given the other limiting precautions the district court took. *Cf. Matlock*, 715 N.W.2d at 6–7 (finding a limiting instruction did not cure possible prejudice because it "failed to restrict the jury's consideration of the bad-acts evidence for [an] improper purpose").

The limited evidence of three prior altercations between Richards and Poell did not pose a danger of unfair prejudice substantially outweighing its probative value. Therefore, the district court did not abuse its discretion in admitting the evidence. Exercising our own

discretion to select issues we address on further review, we let the court of appeals decision stand as the final decision on Richards's contention that the district court committed reversible error in admitting other acts evidence of Richards's altercation with Poell and other members of her family on a separate occasion. *See* Iowa R. App. P. 6.1103(1)(*d*); *State v. Stewart*, 858 N.W.2d 17, 19 (Iowa 2015) (allowing the court of appeals decision to stand on one issue while reviewing some other issues).

Our decision today does not—and we do not intend it to—retreat from our well-established understanding that rule 5.404(*b*) is a rule of exclusion. *See, e.g.*, *Elliott*, 806 N.W.2d at 675; *State v. Nelson*, 791 N.W.2d 414, 425 (Iowa 2010); *Sullivan*, 679 N.W.2d at 24–25; *State v. Castaneda*, 621 N.W.2d 435, 439–40 (Iowa 2001); *State v. Barrett*, 401 N.W.2d 184, 187 (Iowa 1987); *State v. Munz*, 355 N.W.2d 576, 581 (Iowa 1984); *State v. Cott*, 283 N.W.2d 324, 326 (Iowa 1979). Our conclusion simply means that under the circumstances presented here, the danger of unfair prejudice did not substantially outweigh the probative value of the other acts evidence bearing upon a legitimate issue other than propensity. Thus, we find no abuse of discretion in the district court's admission of the evidence under rule 5.404(*b*).

## IV. Conclusion.

A defendant does not eliminate the relevance of intent evidence by asserting self-defense. Accordingly, other acts evidence may be admissible to prove a defendant's intent in connection with the claim of self-defense, provided the evidence does not otherwise present a danger of unfair prejudice that substantially outweighs its probative value. Because the evidence offered in this case did not present such a danger,

the district court did not abuse its discretion in admitting the other-acts testimony.  We affirm Richards's conviction.

**COURT OF APPEALS DECISION AND DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except Wiggins, Appel, and Zager, JJ., who dissent.

**WIGGINS, Justice (dissenting).**

This is another example of our court overreaching to conclude other acts evidence is admissible under Iowa Rule of Evidence 5.404(*b*). *See, e.g., State v. Rodriquez,* 636 N.W.2d 234, 248–55 (Iowa 2001) (Lavorato, C.J., dissenting); *State v. Plaster,* 424 N.W.2d 226, 233–35 (Iowa 1988) (Schultz, J., dissenting).

I would find the alleged other acts of domestic violence were not admissible for two reasons. First, the alleged other acts of domestic violence were not probative of any issue in this case because the defendant claimed self-defense and did not dispute that he had the requisite intent to be convicted of the charged crimes. Second, the danger of unfair prejudice associated with the admission of evidence regarding the alleged other acts of domestic violence substantially outweighs its probative value.

The majority adopts the approach to other acts evidence articulated by the Indiana Supreme Court in *Wickizer v. State,* 626 N.E.2d 795, 799 (Ind. 1993). In that case, the court concluded evidence of other acts may be admissible when a defendant denies culpability *and* affirmatively claims a particular intent contrary to that asserted by the state. *See id.* I disagree with the majority's adoption of this approach. But even assuming this test determines the admissibility of evidence of other acts, I disagree with the majority's application of it to conclude other acts evidence was admissible under the facts of this case.

As the majority notes, my special concurrence in *State v. Reynolds* set forth my analysis concerning the admissibility of other acts evidence when a defendant raises self-defense in an assault case. 765 N.W.2d 283, 295 (Iowa 2009) (Wiggins, J., specially concurring). In plain

English, when the defendant raises self-defense in an assault case, the defendant's intent is no longer in dispute. Rather,

> the State must prove beyond a reasonable doubt any of the following to defeat the claim of self-defense: (1) the defendant initiated or continued the incident resulting in injury; (2) the defendant did not believe he was in imminent danger of death or injury and that the use of force was not necessary to save him; (3) the defendant did not have reasonable grounds for the belief he was in imminent danger of injury or death and that the use of force was not necessary to save him; or (4) the defendant used unreasonable force.

*Id.*

At trial, Richards did not deny culpability for his actions. Instead, he relied solely on his claim that his acts were justified in self-defense. In a very short final argument, his counsel framed the decision confronting the jury as follows:

> You're gonna have to make a decision during your deliberations as to which of these two versions you think is more likely, but bear in mind that the burden of proof is on the State to prove its allegations by proof beyond a reasonable doubt.
>
> . . . .
>
> . . . I suggest to you that all the evidence indicates that he only did what was necessary to protect himself and nothing more beyond that.
>
> If that is true, then he is not guilty of domestic assault resulting in bodily injury or any of the lesser-included offenses.

Thus, Richards's counsel expressly acknowledged the jurors should find him guilty of the crime charged if they did not believe his claim of self-defense.

Richards never claimed he did not assault the victim, and he never claimed he did not have the intent to assault her. Thus, the circumstances of this case are very different from those the Indiana

Supreme Court considered in *Wickizer*. *See* 626 N.E.2d at 799. In that case, the defendant insisted he did not have the requisite intent to be convicted of the charged crime. *Id.* In contrast, Richards does not deny he had the requisite intent to be convicted of the charged crimes. Therefore, his alleged other acts of domestic violence were not probative of a legitimate issue in dispute in this case.

Furthermore, even assuming the alleged other acts of domestic violence were probative with respect to a legitimate issue in dispute, the probative value of those acts was substantially outweighed by the danger of unfair prejudice to Richards. "When the probative value of evidence of a defendant's prior act is substantially outweighed by the danger of unfair prejudice to the defendant, the court must exclude it." *State v. Wilson*, ___ N.W.2d ___, ___ (Iowa 2016). As Chief Justice Lavorato once so aptly pointed out,

> This balancing test has been described as "the modern bastion of a long standing tradition that protects a criminal defendant from 'guilt by reputation' and from 'unnecessary prejudice.'" And "[b]ecause the weighing entails competing interests, it is delicate, and must be employed with care lest accommodation to the prosecutor's needs results in subverting a principle that is central to our concept of fairness." Otherwise, we allow the exceptions in rule 404(b) to swallow the important rule.

*Rodriquez*, 636 N.W.2d at 253 (alteration in original) (citations omitted) (quoting *United States v. Cook*, 538 F.2d 1000, 1004 (3d Cir. 1976)).

When a defendant takes the position that he is guilty unless he acted in self-defense, the only conceivable purpose for admitting other acts evidence addressing his intent would be to tip the scales unduly against him. Such evidence serves no legitimate purpose and therefore should not be admitted.

Accordingly, I conclude evidence concerning Richards's alleged other acts of domestic violence should not have been admitted because they were not probative of any legitimate disputed issue in this case and whatever probative value they might have had was substantially outweighed by the danger of unfair prejudice engendered by their admission.

Appel and Zager, JJ., join this dissent.