**IN THE COURT OF APPEALS OF IOWA**

No. 23-1750
Filed July 2, 2025

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**DUSTIN LEE SAMPLE,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Lawrence McLellan,

Judge.


A defendant appeals his conviction for first-degree murder.  **AFFIRMED.**


James S. Blackburn (argued), Des Moines, for appellant.

Brenna Bird, Attorney General, and Richard Bennett (argued), Assistant

Attorney General, for appellee.


Heard at oral argument by Tabor, C.J., and Ahlers and Langholz, JJ.

**LANGHOLZ, Judge.**

A jury found Dustin Sample guilty of first-degree murder for killing his wife. Sample appeals his conviction, challenging four evidentiary rulings and arguing that the jury's verdict was contrary to the weight of the evidence.

But the district court did not abuse its discretion in admitting text messages between Sample and the victim about his prior abuse of her or the testimony of her coworkers about the abuse as prior bad acts under Iowa Rule of Evidence 5.404(b). The court also correctly ruled that the residual hearsay exception under rule 5.807 applied to the statements that the victim made to the coworkers about his prior abuse. And it correctly excluded the text messages between Sample and the victim about their drinking history that Sample offered under the residual hearsay exception because admission was not necessary. We cannot reach the merits of Sample's last evidentiary challenge—to an officer's testimony about his demeanor—because it is not preserved or adequately briefed on appeal. Finally, the court did not abuse its wide discretion in denying Sample's motion for a new trial on the ground that the verdict was against the weight of the evidence. We thus affirm Sample's conviction.

## I.     Background Facts and Proceedings

One December 2022 evening around 6:45 p.m., officers and first responders were dispatched to Sample's home after receiving a 911 call about an unresponsive female. As a paramedic entered the home, Sample's young son was inside standing at a baby gate blocking a hallway, crying, and pointing down the hallway. Someone called out from down the hallway, so the paramedic left the boy, opened the baby gate, and headed towards the voice. As he walked down

the hall, he noticed a broken picture frame, glass, and a shirt with a large red stain on it.  He then entered the bedroom and saw Sample straddling a woman, later identified as Sample's wife, with a cell phone in his hand.  Sample was not performing CPR.

The paramedic told Sample to leave the room, and he checked the victim for a pulse.  She was lying on her back, naked, except for a pair of pants that had been pulled down to her knees.  She was "very cold to the touch" and no pulse was detected.  The paramedic testified that he "became very unsettled very quickly" about the condition of her face, noting there were many facial injuries.  These injuries included swelling, bruises, a large laceration above her eye, and blood was present.  There were also bruises and blood on the rest of her body.  And based on his training and experience, he assessed that the victim had been dead for "some time."  The paramedic thus performed no life-saving measures and pronounced her dead.

The paramedic began looking around the room and became "very unsettled and very uncomfortable."  He noticed that the bedroom door had blood on it at the bottom and there was also blood on the bed and the floor.  The paramedic testified that he felt "unsafe" because the injuries to the victim's face and the blood splattered around the room suggested that she had "trauma inflicted onto her."  Law enforcement arrived and soon realized that the home was a potential crime scene.

An officer began asking Sample basic questions about the victim's health while Sample held his son in the kitchen of the home.  The officer asked Sample what had happened to the victim, and he told the officer that he did not know.  He

explained that he had been walking the dog and when he got back around thirty minutes later, he found the victim in the bedroom. After securing the scene, officers requested assistance from the Iowa Division of Criminal Investigation ("DCI"). Officers believed this was not an accident because of the victim's injuries, the blood throughout the home, and the disarray of the home including broken items and clumps of hair in the bedroom. Sample and his son were removed from the house, and Sample was taken to the Urbandale Police Station.

Shortly after midnight, Sample was interviewed at the police station for about seven hours. Sample walked the officers through a timeline of his day. He told the officers that he did not see the victim after they both woke up around 8:00 a.m. until he found her in the bedroom and called 911. And he told the officers that he did not know what happened in the home or to the victim. During the interview, an officer observed scratches on Sample's arm, fingers, and back.

DCI officers swabbed various things in the home for DNA testing. They also collected evidence, including clothing and broken pieces of glass that they found in the home. DNA testing revealed that the victim's blood was on broken glass and a vacuum cleaner and that Sample's and the victim's blood were both on a pair of pants and a shirt. DNA for both Sample and the victim were on swabs taken of blood on the bathroom sink. Based on the investigation of the scene and the interview, Sample became the main suspect. And he was eventually arrested and charged with first-degree murder.

Before trial, the district court resolved some of the evidentiary disputes at issue now on appeal. First, the State sought to admit text messages between Sample and the victim and testimony from the victim's two coworkers about prior

injuries through Iowa Rule of Evidence 5.404(b). The State also argued that the coworker's testimony should come in as residual hearsay under Iowa Rule of Evidence 5.807. The court ruled that the coworkers could testify about the prior injuries they observed on the victim, and about the statements the victim made to them about the cause of those injuries because the statements met the residual hearsay exception under Rule 5.807 and were admissible as prior bad acts under Rule 5.404(b). The court also ruled that the text messages between Sample and the victim relating to prior abuse could come in because they were admissible prior bad acts and were admissible under the residual hearsay exception.

The case was tried to a jury over seven days in July and August 2023. The State presented testimony, photographs, videos, reports, DNA analysis, and more at the trial. As part of the State's evidence, over Sample's objections, the two coworkers testified about Sample's past abuse of the victim. They both testified separately that they had noticed scratches on the victim's arms and neck, black eyes, a swollen face, and bruises. And they both said that the victim had initially made excuses about how the injuries occurred but later told them that Sample had caused the injuries. One coworker testified about a time when the victim took her cardigan off, showing her bruises, and told her that Sample did this to her. The other testified about an incident where the victim told her that Sample had thrown car keys at her head. The State also had an officer testify about Sample's demeanor when she saw him at the scene. She said Sample's demeanor was "[n]ot typical," as "[m]ost people are very hysterical," and Sample was not. Sample objected as to the relevance of the evidence, but the court overruled his objection.

The State also presented text messages between Sample and the victim to the jury. Sample objected during trial to this evidence under Iowa Rule of Evidence 5.404(b), but the court overruled the objection. The messages were from four separate days, discussing different aspects of Sample's prior abuse of the victim. In these messages, Sample apologizes to the victim for bruises all over her face and legs, pulling out her hair, and stepping on her throat so she could not breathe. He also acknowledged that he "hurt" the victim both "emotionally and physically," and that he did not want to hurt her. And the victim texted Sample "I hate how [the son] witnesses you beat me up," to which Sample replied, "I do too. Its sick."

After four days of trial, Sample sought to admit other text messages between him and the victim that discussed their drinking history. Sample contended that they were admissible as residual hearsay under rule 5.807. The court found that the messages were inadmissible. It found that the evidence did not meet the five requirements of the residual hearsay exception—specifically the necessity requirement and the notice requirement. The court found that Sample could testify if he wanted about their drinking history, so he had "not established he had no other reasonable means to obtain the evidence." And it found that Sample did not present evidence that he gave the State notice of his intent to use the messages and he did not argue that good cause existed for the lack of notice.

Later in the trial, the medical examiner who performed the autopsy on the victim testified that the injuries to her head were not ones expected from a fall. He concluded that she died of craniocerebral trauma—injury to the brain. While the medical examiner could not conclude the exact object used to cause the brain injury, he said it could have resulted from a wall or door, being hit by hands and

feet, or an object. And he also concluded that the victim's manner of death was homicide based on the autopsy findings, the injuries she had, and the scene.

When the State rested, Sample moved for a judgment of acquittal and directed verdict, arguing that the State had failed to show the necessary elements for first-degree murder. The court denied Sample's motion finding that the State had presented sufficient evidence to establish the elements. Sample then called a pathologist to testify through a video deposition about the manner of the victim's death. He testified that the victim died of blunt force trauma to the head but it was caused by her "falling and stumbling and bumping into things" because of her high level of intoxication at the time. And he thought that she had fallen multiple times, and her injuries could have been obtained over multiple days.

At the end of the trial, the jury found Sample guilty of first-degree murder. Sample moved for a new trial and in arrest of judgment, arguing that the court should not have let the coworkers testify, the text messages about Sample's and the victim's drinking history should have come into evidence, and the verdict was contrary to the law and evidence. A hearing was held on the motions in October 2023 at Sample's sentencing hearing. The court denied the motions, relying on its previous reasoning for the two evidentiary issues and finding that "the greater weight of the evidence" supports the jury's verdict. The court then sentenced Sample to a term of life without parole. Sample now appeals his conviction.

## II.     Text Messages Showing Prior Abuse

Iowa Rule of Evidence 5.404(b) sets forth when a person's prior crimes, wrongs, or acts, often referred to as "prior bad acts," are admissible as evidence. Evidence of prior acts are "not admissible to prove a person's character in order to

show that on a particular occasion the person acted in accordance with the character." Iowa R. Evid. 5.404(b). But it "may be admissible for another purpose such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*. Once the district court determines that the prior-bad-acts evidence is relevant to a legitimate factual issue, it "must then decide if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant." *State v. Taylor*, 689 N.W.2d 116, 124 (Iowa 2004). To determine whether probative value is outweighed by unfair prejudice the court must "examine the actual need for the evidence in light of the issues and the other evidence available." *Id.* at 129 (cleaned up).

We review a district court's evidentiary ruling under rule 5.404(b) for abuse of discretion. *Id.* at 124. And we are mindful that decisions about the admissibility of prior bad acts are "judgment call[s]" that the district court makes and this is "no trivial task." *See State v. Rodriguez*, 636 N.W.2d 234, 240 (Iowa 2001). We thus give "much leeway" to "trial judges who must fairly weigh probative value against probable dangers." *Id.* (cleaned up).

Sample argues that messages about prior abuse between him and the victim should not have been admitted as "they were clearly evidence used to suggest and establish propensity." And he contends that they do not "satisfy the admissibility requirements" of rule 5.404(b), and even if the messages were relevant, the relevancy was "significantly outweighed by the prejudice in admitting"

them. He thus claims that the district should not have admitted the messages.[1] We disagree.

The district court found that the messages about prior abuse between Sample and the victim were "relevant and material" to "Sample's identity, motive, intent, plan, absence of mistake, lack of accident and opportunity." And it found that the probative value of the messages was not outweighed by any unfair prejudice to Sample. As in *State v. Taylor*, evidence of prior bad acts between individuals that have an "emotional attachment" demonstrates a person's "intent at the time of a crime." *Taylor*, 689 N.W.2d at 125. A "defendant's prior conduct directed to the victim of a crime, whether loving or violent, reveals the emotional relationship between the defendant and the victim and is highly probative of the defendant's probable motivation and intent in subsequent situations." *Id.* And our supreme court has held that "[t]he most obvious example of the legitimate use of prior-bad-acts evidence is the admission of evidence of a defendant's prior assaults of a victim in a prosecution of the defendant for the subsequent murder of the victim." *Id.*

The text messages were relevant to show Sample's intent and motive. As a married couple, Sample and the victim had a "emotional attachment," and these messages show how Sample has responded with "anger directed at [the victim] in the past." *Id.* These messages are relevant to show the intent of Sample the day she died. And the district court did not abuse its discretion in finding that the

---

[1] In briefing, Sample refers to the messages as hearsay statements, but he presents no argument on the hearsay issue. This issue is thus waived. *See* Iowa R. App. P. 6.903(a)(8)(3); *State v. Vaughan*, 859 N.W.2d 492, 503 (Iowa 2015).

probative value of the text messages was not outweighed by any unfair prejudice to Sample because of the need for this evidence. This evidence helped the State meet its burden to show that Sample had malice aforethought, an element of first-degree murder. *See State v. Newell*, 710 N.W.2d 6, 22 (Iowa 2006) (holding that there was a need for prior-bad-acts evidence because the "prosecution had the additional burden to prove the defendant acted with malice aforethought"). And they shed light on the circumstances of what happened at the home that day. *See Taylor*, 689 N.W.2d at 129 ("[T]here was clearly a need for evidence that would clarify the circumstances of the defendant's conduct and thereby shed light on his intent").

The court also gave the jury an instruction explaining how this evidence could be used, stating that Sample's prior acts are to be used "to show identity, motive, intent, or absence of mistake or accident and for no other purpose." *See State v. Richards*, 879 N.W.2d 140, 153 (Iowa 2016) (noting that a limiting instruction can "curtail[] the danger of unfair prejudice"). And so, the district court did not abuse its discretion in admitting the text messages under rule 5.404(b).

### III. Coworkers' Testimony

Sample makes two arguments about testimony the court admitted from the victim's two coworkers about her prior abuse. First, he argues that the testimony included statements about Sample's prior bad acts and should have been excluded as they met none of the exceptions under rule 5.404(b). And he argues that the testimony included hearsay statements, and the court erred in admitting the statements under the residual hearsay exception. We take each argument in turn.

*Prior Bad Acts.* Two coworkers testified about times when they saw injuries on the victim, including bruises, black eyes, and a swollen face. And she told them that Sample had caused those injuries. Sample argues on appeal that the only reason that the State offered this evidence was "to suggest that Defendant had injured [the victim] before, and therefore, he probably killed her this time," which is what rule 5.404(b) does not allow. And he argues that this testimony should not have come in because any relevance the prior bad acts had were significantly outweighed by the prejudice it caused to Sample.

Just as with the text messages about the prior abuse, we see no abuse of discretion in the district court's ruling allowing the coworkers to testify about the injuries they observed and the statements they were told. Again, the testimony was relevant to show Sample's intent and motive. *See Taylor*, 689 N.W.2d at 128. So too did the court give the jury a limiting instruction, explaining how this evidence could be used and not used. Sample argues in his briefing that his prior "uncharged acts constituting assault against his wife" could "arguably prove[] identity or motive" but "only if it is considered to demonstrate [Sample's] propensity towards assaultive conduct." But Sample's argument that his prior acts of abuse could be considered only as propensity evidence is contrary to governing precedent. *See id*. at 129 ("Because intent is seldom proved by direct evidence, but rather is usually established by inference, the circumstances surrounding the alleged assault . . . were particularly important here."); *Richards*, 879 N.W.2d at 147 ("[E]vidence of prior assaults was relevant to the defendant's intent" and that "evidence was highly probative because only the defendant and the victim were present."); *see also State v. Bassett*, No. 21-0923, 2022 WL 16630788, at *5 (Iowa

Ct. App. Nov. 2, 2022) (holding that prior bad acts evidence was admissible because "[d]omestic violence is frequently not limited to a single instance, but is instead a pattern of behavior"). The district court did not abuse its discretion in deciding that the probative value of the coworkers' testimony "substantially outweigh[ed] the danger of any unfair prejudice to [Sample]." And thus, the evidence was admissible under rule 5.404(b).

*Residual Hearsay*. When the coworkers testified about the injuries they saw on the victim, they also testified that she told them that Sample caused those injuries by abusing her. Sample argues that the residual hearsay exception under rule 5.807 does not apply, and this evidence should not have come in.[2]

Under rule 5.807, hearsay is admissible when it is established that the evidence is "supported by sufficient guarantees of trustworthiness," is necessary because "[i]t is more probative . . . than any other evidence that the proponent can obtain through reasonable efforts," and reasonable notice of intent to use this evidence was given to the other party.[3] Iowa R. Evid. 5.807. This exception is "narrow" and "should be used sparingly." *State v. Skahill*, 966 N.W.2d 1, 11 (Iowa 2021) (cleaned up). "We review evidentiary rulings on hearsay for errors at law."

---

[2] For the first time on appeal, Sample argues that admission violated the Confrontation Clause. But he never raised this issue in the district court. So any error is not preserved. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).
[3] Prior to January 1, 2023, the residual hearsay exception contained five elements that had to be met under rule 5.807: (1) trustworthy, (2) material, (3) necessary, (4) serve the interest of justice, and (5) notice. *See State v. Skahill*, 966 N.W.2d 1, 10 (Iowa 2021). Even though this trial occurred after January 1, 2023, the district court conducted an analysis of all five factors under the old rule. Because the court found that the hearsay met all five factors, it would have reached the same conclusion if it were only analyzing trustworthiness and necessity under the new rule. Because Sample appeals under the new rule, we analyze only trustworthiness and necessity.

*Id.* at 7. And "we give deference to the factual findings of the district court when the findings are supported by substantial evidence." *Id.*

We agree with the district court that this testimony meets the residual hearsay exception under rule 5.807. Sample appeals the exception's requirements of trustworthiness and necessity. Taking each requirement in turn, the statements from the victim to her coworkers saying that Sample abused her have "circumstantial guarantees of trustworthiness." *State v. Veverka*, 938 N.W.2d 197, 203 (Iowa 2020) (cleaned up). The district court considered many factors to evaluate the truthfulness of the statements. The coworkers agree on what the victim told them. And she told the coworkers multiple times that Sample had caused the injuries they saw. We agree with the district court that the record does not contain credible evidence that the victim had "evil motive" to tell her coworkers about the abuse. *See State v. Dye*, No. 23-0745, 2024 WL 3887207, at *4 (Iowa Ct. App. Aug. 21, 2024) (finding that failing to show an improper motive or bias supports trustworthiness). Based on this evidence, we agree with the district court that the testimony is trustworthy.

We also find that the testimony is necessary. Again, for evidence to be necessary, it "only needs to be more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." *Skahill*, 966 N.W.2d at 11 (cleaned up). There is no other way for the State to present this evidence because the victim cannot give in-court testimony about the substance of the statements—she is deceased. *Cf. id.* at 13–14 ("[W]hen the same evidence is available through in-court testimony, hearsay statements are generally not necessary under the residual exception."). We thus find that the coworkers'

testimony meets the residual hearsay exception under rule 5.807. And so, the district court did not err by allowing the coworkers' testimony.

## IV. Text Messages about Drinking History

Next, Sample argues that the district court erred in refusing to admit text messages between Sample and the victim showing their drinking history. He claims that the district court erred by not admitting the evidence under the residual hearsay exception of rule 5.807. He argues that "admitting the domestic violence text messages without the context of the text messages about problematic drinking behavior gave an inaccurate picture of the dynamic of the couple's daily life."

Sample focuses on the district court's conclusion that he failed to comply with the notice requirement for the residual hearsay exception. But that was only one ground of the court's decision. The court also found that the messages failed the necessity requirement of the exception. Because all the requirements must be satisfied, we elect to consider whether the court correctly found admission of the messages was necessary. *Skahill*, 966 N.W.2d at 8, 10. And we agree with the district court that Sample did not establish that the messages are "more probative on the point for which" Sample is offering it "than any other evidence" that Sample could get "through reasonable efforts." Iowa R. Evid. 5.807(a)(2). Sample could have testified at the trial about both his and the victim's drinking history. *See id.* at 13–14. Thus, this evidence fails the necessity requirement and is inadmissible under the residual hearsay exception. The district court did not err in finding this evidence inadmissible.

### V.     Police Officer's Testimony about Sample's Demeanor

For his last evidentiary claim, Sample challenges the admission of a police officer's testimony about Sample's demeanor at the scene in comparison to the officer's observations in past similar cases.  Sample argues on appeal that this evidence "lacked a foundation of reliability."  But at trial, Sample only objected to the relevancy of the officer's testimony about his demeanor.  "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."  *Meier*, 641 N.W.2d at 537.  Because Sample's foundational challenge was not raised to the district court, we cannot decide it now.  And so, the only argument preserved for our review is the relevancy of the officer's testimony.  But all of Sample's arguments on appeal are about the lack of foundation of this testimony with only a stray reference to the evidence being irrelevant unsupported by any argument or authority.  So any claim of error about the relevancy of the officer's testimony about his demeanor has been waived.  *See* Iowa R. App. P. 6.903(*a*)(8)(3); *Vaughan*, 859 N.W.2d at 503.

### VI.     Verdict Contrary to Weight of the Evidence

Under our rules of criminal procedure, a defendant may request a new trial when a verdict is "contrary to law or evidence."  Iowa R. Crim. P. 2.24(2)(b)(7).  "A verdict is contrary to the weight of the evidence only when a greater amount of credible evidence supports one side of an issue or cause than the other."  *State v. Wickes*, 910 N.W.2d 554, 570 (Iowa 2018) (cleaned up).  A new trial should be granted only when "the evidence preponderates heavily against the verdict rendered" and if the "verdict rendered was a miscarriage of justice."  *Id.* (cleaned up).  The district court is to "weigh the evidence and consider the credibility of

witnesses." *State v. Ellis*, 578 N.W.2d 655, 658 (Iowa 1998) (cleaned up). And the court should only grant a request for a new trial in "extraordinary case[s]." *State v. Linderman*, 958 N.W.2d 211, 223 (Iowa Ct. App. 2021) (cleaned up).

We review a district court's denial of a motion for a new trial challenging the weight of the evidence for abuse of discretion. *State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003). We do not make our own assessment of whether the verdict is contrary to the evidence but analyze only whether the district court abused its discretion in denying the new trial. *Wickes*, 910 N.W.2d at 564. And "[t]he district court has broad discretion in ruling on a motion for new trial." *Reeves*, 670 N.W.2d at 202. So we will reverse as an abuse of discretion only when "the district court exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.*

Sample contends that "[t]he State's theory of the case" that he "committed premeditated and deliberate murder . . . is contrary to the weight of the evidence."[4] He contends that the theory "presupposes that decedent died due to the act of a person and not the result of a fall." He argues that the lack of a murder weapon or injuries on his hands and feet undermines the State's theory that he killed the victim. And he claims that the weight of the evidence supports a finding that if he

---

[4] Sample makes this argument in a single division of his appellate brief under the heading: "The verdict is contrary to the law and the evidence. The Court should have sustained Defendant's Motions for Acquittal." And he includes only the standard of review for motions for acquittal. But as he confirmed at oral argument, Sample exclusively argues that the verdict is contrary to the weight of the evidence and seeks only remand for a new trial—not a judgment of acquittal. We thus do not consider any sufficiency-of-the-evidence claim to be properly before us.

killed the victim, "it was in the heat of the moment passion" rather than the premeditation necessary for first-degree murder.

While these are all fine arguments to make to the jury or to the district court that heard and could weigh all the evidence under rule 2.24(2)(b)(7), they do not give us any basis to conclude that the district court abused its considerable discretion in denying Sample's motion for a new trial. The court considered all the evidence that Sample points to—as well as the other contrary evidence presented in the trial—and found that "the greater weight of the evidence does not support a verdict other than the verdict that was rendered by the jury." Given the ample evidence supporting the verdict, Sample's arguments do not show that the court's reasoning was "clearly untenable" or "unreasonable." *Id.* And so, we affirm the district court's denial of Sample's motion for a new trial.

**AFFIRMED**.